## PERMIAN OIL COMPANY V. M. A. SMITH ET AL.

No. 6351. Decided June 19, 1934.
Rehearings overruled April 7, 1937; May 17, 1937.
(73 S. W., 2d Series, 490; 107 S. W., 2d Series, 564.)

414

416

*J. B. Dibrell, Sr.,* of Seguin, *Dibrell & Starnes,* of Coleman, *John & Jack Sayles,* of Abilene, *Hart Johnson,* of Fort Stockton, and *Critz & Woodward,* of Coleman, for plaintiff in error.

The plaintiff's petition in suit between former contestants of boundary line, having been in statutory form of trespass to try title describing the land by section and block numbers and name of original grantee as well as by field notes and monumental corners and defendant having answered in statutory form of not guilty, the judgment that plaintiff take nothing and that defendant go hence without day was not void, but was and is valid and admissible in evidence. McCamant v. Roberts, 66 Texas 260; Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063; Simmons v. Arnim, 110 Texas 309, 220 S. W. 66.

Where first amended original petition of the plaintiff in the former suit stated a cause of action in the form of trespass to try title against defendant it was not subject to general demurrer or a motion in arrest of judgment. Plummer v. Marshall, 126 S. W. 1162 (writ refused); Boydston v. Sumpter, 78 Texas 402, 14 S. W. 996; Boon v. Hunter, 62 Texas 582.

The judgment in connection with the pleadings on which it was based in the former suit between adjoining land owners, as to boundary, being a final and conclusive adjudication of title and right of possession divesting the plaintiff in that suit, was admissible in evidence as a muniment or link in the chain of title of a vendee of the defendant in the former suit and plaintiff in the latter suit for title and possession of said tract of land, the tender of said evidence having been preceded by the introduction of a regular and consecutive chain of title to said tract of land from the State down to the plaintiff in that suit followed by the introduction in evidence of a regular chain of muniments of title down to the plaintiff in the later case. Bone v. Walters, 14 Texas 564; Barr v. Gartz's Heirs, 4 Wheat (U. S.) 212, 4 L. Ed. 553.

The vital issue under the pleadings in the former suit being the title and right of possession of the land in controversy in the present suit, the ownership of which was claimed by both parties in that suit, the fact that the possible boundary conflict between that survey and one owned by the defendant in that suit and not claimed by the plaintiff did not make that case one of boundary. Cox v. Finks, 91 Texas 318, 42 S. W. 1052, 43 S. W. 1; Schley v. Blum, 85 Texas 551, 22 S. W. 667.

Even though it were conceded that plaintiff in the case at bar takes a position inconsistent with the position or contention of its predecessor-defendant in boundary suit wherein a take nothing judgment was rendered against the plaintiff, when it establishes here by legal and competent evidence the location on the ground and shows there is no conflict between it and another survey, plaintiff is nevertheless not estopped to establish such facts by reason of such inconsistency, because none of the defendants herein are privy to, but are all strangers to the controversy between plaintiff predecessor and those claiming against him. Hussman v. Durham, 165 U. S. 144, 41 L. Ed. 664; Heard v. Vineyard, 212 S. W. 489; Freeman on Judgments, 5th ed., 961.

On question of plaintiff's right to an instructed verdict and for damages for waste of royalty oil prior to May 31, 1930. Patrick v. Smith, 90 Texas 267, 38 S. W. 17; Stevens v. Masterson, 90 Texas 417, 39 S. W. 292, 921.

*W. A. Keeling* and *Black & Graves,* of Austin, *F. H. DeGroat,* of Duluth, Minn., *Maxey, Holden & Holloman* and *Chas. H. Holden,* and *John Rogers,* all of Tulsa, Okla., *Chas. Gibbs, H. O. Williams, Gibbs & Lewis, John M. Davenport, Harris, Harris & Sedberry, Smith & Neill, Robt. T. Neill, James Cornell, J. W. Stovall, R. G. Hughes* and *D. B. Hardeman,* all of San Angelo, *Hiner & Pannill, Phillips, Trammel, Chizum, Price, Estes & Edwards, Burney Braley,* all of Fort Worth, *Thompson, Knight, Baker & Harris,* of Dallas, *Baker, Botts, Andrews & Wharton, Clarence Wharton, Rex G. Baker,* and *R. H. Whilden,* all of Houston, *W. C. Jackson,* of Fort Stockton, *Brian Montague,* of Del Rio, *Thompson, Mitchell, Thompson & Young,* and *Lyold L. Adams,* all of St. Louis, Missouri, for defendants in error.

A judgment in another suit among other parties, did not constitute a muniment of title in favor of plaintiff, nor a link in its chain of title, and was therefore properly excluded. Bone v. Walters, 14 Texas 564; Blaffer v. State, 31 S. W. (2d) 172; Ellis v. LeBow, 96 Texas 532, 74 S. W. 528.

The judgment in a former suit wherein plaintiff's predecessor in title took a take nothing judgment against the plaintiff, together with the petition and answer therein, and all legal and competent extrinsic evidence offered by the plaintiff in the case at bar on the trial, are insufficient to establish a prima facie right in the plaintiff to recover the land sued for by it herein. Nichols v. Dibrell, 61 Texas 541; Goldman v. Douglas, 81 Texas 648, 17 S. W. 235; Linney v. Wood, 66 Texas 22.

When a judgment is introduced in evidence, extrinsic evidence is not admissible to vary or contradict it, if, on its face, it adjudicates a certain matter, but if, upon inspection of the judgment itself it is uncertain as to what was adjudicated extrinsic evidence is admissible to show what was at issue and decided by the decree. Cook v. Burnley, 45 Texas 97; Hume v. Schintz, 90 Texas 72, 36 S. W. 429; Hughes v. Driver, 50 Texas 175.

*Walter L. Kimmel,* of Tulsa, Okla., filed brief as amicus curiae.

MR. JUDGE LEDDY, of the Commission, delivered the opinion of the Court.

This is a statutory action of trespass to try title for the recovery of the title and possession to a tract of 407 acres of land described as Survey 103, Block 194, T. C. Railway Company in Pecos County, Texas, and to recover damages growing out of the waste and wrongful appropriation of royalty oil and gas produced from such land. The royalty on the oil amounted to $431,067.15 on May 1, 1930.

The suit was instituted by plaintiff in error, Permian Oil Company, remote vendee of Hickox, as plaintiff, against Mrs. M. A. Smith, surviving widow, sole devisee and independent executrix of the estate of her deceased first husband, John Monroe, and against her second husband, M. A. Smith, and her immediate vendees, and the oil and pipe line companies running oil from such survey.

Mrs. Monroe Smith died before the trial of the case, and the administrator of her estate and her heirs were properly substituted as parties defendant.

Upon a trial with a jury plaintiff in error, by proper documentary evidence, established a regular chain of title from the State of Texas down to John Monroe, vesting in him title to Section 103, Block 194, T. C. Railway Company, and Section 35, Block 194, G. C. & S. F. Railroad Company in Pecos County, Texas.

Plaintiff in error offered in evidence the following additional documentary evidence:

1. The original petition filed by John Monroe on August 22, 1910, showing a statutory action of trespass to try title in Cause No. 854, styled John Monroe, plaintiff, vs. T. F. Hickox, defendant, in the District Court of Pecos County, Texas, for the title and possession of three tracts of land situated in said county, being all of Section 104, Block 194, T. C. Railway Company, original grantee, a part of Section 103, Block 194, T. C. Railway Company, original grantee, and a part of Survey 35, Block 194, G. C. & S. F. Ry. Company, original grantee.

2. The first amended original petition filed by John Monroe on February 28, 1911, in a statutory form of trespass to try title in said Cause No. 854, said amended petition being as follows:

"In the District Court of Pecos County, Texas,

February Term A. D. 1911. John Monroe vs. T. F. Hickox, No. 854.

"To the Honorable District Court of Said County:

"Now comes John Monroe who resides in Pecos County, Texas, hereinafter called plaintiff, and leave of the Court having first been had and obtained, files this his first amended original petition and complains of T. F. Hickox, hereinafter styled defendant, and for cause of action, plaintiff represents to the Court that on or about the 21st day of April A. D. 1909, he was lawfully seized and possessed of the following described land and premises, situated in the County of Pecos, State of Texas, holding and claiming the same in fee simple, to-wit:

1st.

"All of Section No. 104, Block 194, T. C. Ry. Co. original grantee, situated in Pecos County, Texas.

2nd.

"All of Section No. 103, Block 194, T. C. Ry. Co. original grantee situated in Pecos County, Texas, described as follows:

"Beginning at a stake and mound at the N.E. Cor. of Sur. No. 102, Blk. 194, T. C. R. R. Co., Cert. 2302, for the N.W. Cor. of this survey.

"Thence east 1900 vrs. to a stake and mound for the N.E. Cor. of this survey.

"Thence south 1209 vrs. to a stk. and md. for the S.E. Cor. of this survey.

"Thence West 1900 vrs. to a stk. and md. for the S.W. Cor. of this survey.

"Thence North 1209 vrs. to the place of beginning. And said Section No. 104, Block No. 194, T.C. Ry. Co. is described by metes and bounds as follows, to-wit:

"Beginning at a stake and mound at the N.E. Cor. of Survey No. 103, Block No. 194, for the N.W. Cor. of this survey.

"Thence East 1900 vrs. to stake and mound for N.E. Cor. of this survey.

"Thence South 1209 vrs. to stake and mound for S.E. Cor. of this survey; thence West 1900 vrs. to stake and mound for S. W. Cor. of this survey; thence North 1209 vrs. to the place of beginning.

"That on the day and year last aforesaid, defendant unlawfully entered upon the premises and ejected plaintiff therefrom and unlawfully, withholds from him the possession thereof to his damage in the sum of $2,000.00. That the reasonable rental value of said land and premises is $100.00 per annum; that on the date that defendant entered upon plaintiff's said land, plaintiff had on same a wire fence composed of wire nailed on the posts set in the ground, that defendant has, since said date, broke, tore down and destroyed plaintiff's said fence and the posts and wire composing the same, to the plaintiff's damage in the sum of $100.00.

"Therefore, plaintiff prays judgment of the court that inasmuch as the defendant has been duly cited to appear and answer this petition, that plaintiff have judgment for the title and possession of said lands and premises above described, and that writ of restitution issue, and for his rents, damages and costs of this suit, and for such other relief, special and general, in law and in equity, that he may be justly entitled to, etc."

3. The original answer of defendant T. F. Hickox in said cause, which consisted of a general denial, and a plea of not guilty.

4. The judgment rendered and entered in the minutes of the district court of Pecos County in said Cause No. 854, which is as follows:

"In the District Court of Pecos County, Texas.

Feb. Term 1911. John Monroe vs. T. F. Hickox. No. 854.

"On the 28th day of February A. D. 1911, came on to be heard the above numbered and entitled cause in its regular order on the docket, and thereupon came the plaintiff in person and by attorney, and also came the defendant in person and by attorney, and all parties announced ready for trial, and no jury having been demanded and all issues of law and fact being

submitted to the court, the pleadings were thereupon read, the evidence introduced and argument of counsel made, and the court after hearing same, thereafter on the 4th day of March A. D. 1911, in open court pronounced judgment in favor of the defendant. It is therefore ordered, adjudged and decreed by the court that the plaintiff John Monroe take nothing by his suit against the defendant T. F. Hickox, and that the defendant T. F. Hickox, go hence without day and recover against the plaintiff John Monroe all costs of suit, for which execution will issue. To which judgment of the court the plaintiff John Monroe in open court excepted and gave notice of appeal to the Court of Civil Appeals of the 4th Supreme Judicial District of Texas, sitting at San Antonio, Texas, and upon plaintiff's request and good cause being shown he is hereby given sixty days after the adjournment of this court within which to file his statement of facts herein."

5. Probate proceedings in the estate of T. F. Hickox, including his probated will, whereby he devised all of his estate to his surviving wife, Leona A. Hickox, and appointed her independent executrix.

6. A regular chain of title from Mrs. Leona A. Hickox individually and as sole devisee and independent executrix of the will and estate of her deceased husband, T. F. Hickox, to plaintiff in error, Permian Oil Company.

7. Parol and written evidence of the location on the ground of Survey 103.

8. Evidence of the amount and value of the oil produced from Survey 103, the 1/8 royalty oil produced from said land from September 16, 1927, to May 31, 1930, amounted to 586,-014.25 barrels, of the market value of $431,067.15.

Objections were made by some of the defendants to the pleadings and judgment in Cause No. 854, Monroe v. Hickox. These objections were overruled at the time the evidence was offered, and these records were admitted in evidence. At the conclusion of the testimony offered by plaintiff in error, the defendants in error, with the exception of the oil and pipe line companies, presented a motion to strike out the pleadings and judgment in Cause No. 854, John Monroe v. T. F. Hickox, introduced in evidence by plaintiff in error as a link in its chain of title; and said defendants also moved that the jury be peremptorily instructed to return a verdict in their favor.

In support of the motion of defendants in error, Jerry Monroe, et al., to strike out such pleadings and judgment, they

tendered, and the trial court considered in evidence, the papers in Cause No. 854, Monroe v. Hickox, including the findings of fact and conclusions of law. Such findings of fact and conclusions of law are as follows:

"FINDINGS OF FACT.

"1. Block C-4, G. C. & S. F. Ry. Co., is composed of sixty-four surveys. The field notes show that they were all made by H. C. Barton, Deputy Surveyor of Pecos County, between the 5th and 20th days of October, 1881. According to the field notes of Survey No. 4, of this block, the Northwest corner was marked as follows: 'Pile of pebbles for the N.E. Corner of Survey No. 3, this block from which capstone mountain bears south 1500 varas,' the Northeast corner is described as 'Stone mound from which capstone mountain bears S. 19 E and another capstone mountain bears N. 70 E.' Corners answering to this description were found on the ground located relatively as shown in the sketch of surveyor W. T. Hope.

"2. Block Z, Texas Central Railway Company is composed of fifty-four surveys. They were made by F. Schadowsky, between the 4th and 8th days of November, 1882. The beginning calls of this block tie on to Block C-4. There is no testimony locating this block on the ground.

"3. Block 194, G. C. & S. F. Ry. Company is composed of One Hundred surveys, the record showing they were made by L. W. Durrell, Deputy Surveyor of Pecos County, between the 17th and 31st days of May, 1883. It appears that he made fifteen surveys on each of the first six days and ten surveys on the seventh day. The beginning calls of this block tie on to Block Z, G. C. & S. F. Railway but there is no testimony locating on the ground any of the original land marks called for in the field notes.

"*3.* Block No. 178, Texas Central Railway company is composed of thirty-six surveys, the record showing they were made by L. W. Durrell, Deputy Surveyor of Pecos County. The first eighteen of these surveys appear to have been made on November 21, 1882, and the last eighteen made on November, 22, 1882. The beginning call starts at river survey at No. 543, in the name of H. & G. N. Railway company. None of the land marks called for by the field notes of this block were located on the ground by any of the testimony.

"4. The river surveys shown on the map of surveyor W. T. Hope were made in the year 1876 by Jacob Kuechler, Deputy Surveyor of Pecos County Survey 4 of Block C-4, G. C. & S. F. Railway Company was located on the ground from objects found corresponding to the calls for its northeast and northwest

corners relatively as shown on Hope's map. Survey 71, I. & G. N. Railway on the Pecos River was located on the ground relatively as shown in the map of surveyor W. T. Hope, with its Northwest corner marked by stone mound; there is no call in the field notes for a stone mound at this point. Survey No. 51, I. & G. N. Railway was located on the ground relatively as shown on Hope's map by course and distance from the Northwest corner of Survey 71, established as aforesaid, and its location verified by a call of its field notes for road on a mesa. Survey No. 3, Runnels county school land was located on the ground by course and distance based on Surveys 71 and 61, which were located on the ground as aforesaid. All of these locations were made on the ground by surveyor W. T. Hope and were based on actual runnings as shown by the red lines delineated on his map. The balance of the surveys shown on the map of surveyor Hope were platted in by him according to their calls for course and distance based on his actual work on the ground shown by the red lines, and with relation to the aforesaid land marks.

"5. By beginning at the Northeast corner of Survey 4, Block C-4, G. C. & S. F. Railway Company, as found on the ground, and running by course and distance and thereby locating surveys 103 and 104, Texas Central Railway; these two surveys would lie adjoining and immediately south of Survey 3, Runnels County School land, and would not conflict with surveys 34 and 35, Texas Central Railway.

"6. By constructing Block 194, G. C. & S. F. Railway, based on the calls for the river surveys, as located on the ground Surveys 34 and 35, G. C. & S. F. Railway Company, Block 194 would lie adjoining and immediately south of Survey No. 3, Runnels County School land and be in total conflict with surveys 103 and 104.

"7. Surveys 103 and 104 being the land sued for by plaintiff, are junior surveys to surveys 34 and 35.

"8. I am unable to follow the footsteps of the original surveyor in establishing Block 194, G. C. & S. F. Ry. either in the original locations of any of the sections or in the location of the corrected surveys, and I am unable to ascertain the true intention of the original surveyor as to locating this block on the ground.

"9. I am unable from the testimony in evidence to ascertain the true location on the ground of Surveys Nos. 103, 104, 34 and 35 above referred to.

"10. I find that Block 194, G. C. & S. F. Railway was originally located by an office survey.

"11. I find that the calls of block 194 to tie to Block Z and its calls to tie on to the river surveys are repugant to each other and inconsistent, and I am unable to determine which of these calls should be regarded as a mistake of the surveyor.

"12. I find that the plaintiff is the legal owner and holder of the fee simple title to Survey No. 103, Texas Central Railway and that he holds survey No. 104, under a contract of purchase from the State of Texas, in accordance with the school land laws and that he has made his proof of occupancy thereon as required by law, and that his said sale is in good standing.

"13. Defendant is the holder and entitled to the possession of Survey No. 34, under a contract of purchase from the State of Texas, in accordance with the school land laws, and his sale is in good standing.

"14. The said Hope map is hereby referred to and made a part hereof."

"CONCLUSIONS OF LAW.

"1. The burden of proof is upon the plaintiff to establish the location of the two tracts of land sued for upon the ground, and to show that there is no conflict between said surveys and surveys numbers 34 and 35, the said surveys numbers 34 and 35 being senior surveys.

"2. It is presumed that the work of an official surveyor was actually done on the ground, but the amount of work he certified to having done within a given time, the character of the work as called for by the field notes, and the lack of evidence found on the ground, discrepances in distances betwen objects called for and the like, may be sufficient to rebut said presumption.

"3. Where there are two theories upon which a survey which is not fixed to the ground by any of its calls can be constructed, and one theory shows a conflict between a senior and a junior survey, and the other theory shows no conflict between them and the evidence, aided by the presumptions of law, furnishes no method for following the footsteps of the original surveyor or for arriving at the intent and purpose of the original surveyor, the presumption of law will be resolved in favor of the senior survey that there is a conflict, the owner of the junior survey being the plaintiff.

"4. Having found as a fact that the location of surveys numbers 34 and 35, and 103 and 104, cannot be located upon the ground from the testimony in evidence and that there is a total conflict between them based on certain calls and no conflict based on other calls which theories are irreconcilable and the true theory unascertainable from the testimony, I conclude

that the plaintiff should take naught by this suit and that the defendant should recover his costs herein."

Plaintiff in error requested the court to submit the case to the jury on special issues, but the request was overruled. Thereupon it moved the court to instruct peremptorily the jury to render a verdict in its favor against the oil and pipe line companies; this motion was also overruled.

The trial court sustained the motion of Jerry Monroe, et al., and struck from the evidence the pleadings and judgment in Cause No. 854, John Monroe v. T. F. Hickox, to which action and ruling plaintiff duly excepted. The court then on motion of certain defendants, and of his own motion, instructed the jury to return a verdict for defendants in error, and upon such instructed verdict judgment was accordingly rendered against plaintiff in error.

Plaintiff in error duly prosecuted its writ of error to the Court of Civil Appeals at El Paso. This resulted in an affirmance of the judgment of the trial court.

The voluminous nature of the record in this case will appear from a recital of the fact that the writ of error filed in this Court consists of nearly 400 pages, while the briefs of all the parties total more than 3000 pages.

There are a number of legal questions presented for determination. The main question is whether the judgment in Cause No. 854, Monroe v. Hickox, constituted a valid muniment in plaintiff in error's chain of title.

Defendants in error seek to sustain the action of the trial court in excluding the judgment in Cause No. 854, Monroe v. Hickox, upon the following grounds:

a. It is proper to construe said judgment in the light of the findings of fact and conclusions of law and when so construed the judgment must be declared void because it determines and settles nothing.

b. The record in said cause shows that the plaintiff's suit was one of boundary and that it was tried and determined as such by the court.

c. The judgment in said cause is void because when interpreted in the light of the pleadings and the findings of fact and conclusions of law there is not sufficient description of any land as will permit its being identified and located on the ground.

d. Monroe's first amended petition in Cause No. 854 was insufficient to support a judgment for either party, since it failed to meet the essential requirements of subdivision 2, Article 7366, R. S. 1925, which is the same as subdivision 2,

Article 5250, R. S. 1895, which was in force at the time said judgment was rendered.

e. In said Cause No. 854 the defendant Hickox successfully maintained that the boundaries called for in the patent for Section 103 owned by Monroe were in conflict with Survey 34 (the senior survey) owned by Hickox, and that inasmuch as Hickox has long since parted with his title to Survey 34, those claiming under him should not now be heard to say that Section 103 is not a part of Survey 34.

Defendants in error further assert that the judgment in Cause No. 854, Monroe v. Hickox, was not admissible in evidence against defendants in error H. B. Davenport, Nellie M. Hill and husband, J. R. Hill, Sam K. Viersen, K. N. Hapgood, Frank T. Pickrell, Max Gutman and Benjamin Gutman, J. A. Chapman, Peerless Oil & Gas Company, Metropolitan Royalty Corporation, G. S. Davis, J. R. Parten, Marland Employees Royalty Company, Southland Royalty Company and Empire Gas & Fuel Company for the following reasons:

1. Because said judgment was not recorded in the office of the county clerk of Pecos County, Texas, as required by Article 6638, R. S. 1925, and Article 6835, R. S. 1911, prior to the time the above named defendants in error purchased their mineral interest and mineral estate from Mrs. M. A. Smith and her husband.

2. The entry of a judgment in the minutes of the District Court of Pecos County should not be construed to constitute a recording of such judgment in the office of the county clerk as required by the above named articles.

3. The fact that the offices of the county and district clerk are held by the same person does not affect the requirement that the failure to record a judgment by which the title to land is recovered in the office of the county clerk render such judgment inadmissible in evidence in support of any right claimed by virtue thereof.

4. The burden rested upon the plaintiff in error to show as a predicate for the introduction of said judgment that the defendants in error before named had either actual or constructive knowledge of said judgment, and that they were not bona fide purchasers for value.

1 The doctrine has been thoroughly settled by repeated decisions of the courts of this State that a judgment in an action of trespass to try title that plaintiff take nothing by his suit is an adjudication that the title to the land involved is in the

defendant and such a judgment is equally as effective for that purpose as one expressly vesting title in the defendant. French v. Olive, 67 Texas 400, 3 S. W. 568; Wilson v. Swasey, (Sup.) 20 S. W. 48; Hoodless v. Winter, 80 Texas 638, 116 S. W. 427; Houston Oil Co. v. Village Mills Co., (Com. App.) 241 S. W. 122; Stark v. Hardy, 29 S. W. (2d) 967; Dunn v. Land, 193 S. W. 704; McAllen v. Crafts, 139 S. W. 44; Drummond v. Lewis, 157 S. W. 268; Bomar v. Runbe, 225 S. W. 287; Taylor v. W. C. Belcher Loan & Mortgage Co., 265 S. W. 403.

The principle announced in these cases is but an application of the provision of the statute to the effect that any final judgment in an action to recover real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming through or under him, by title arising after the commencement of the action. Art. 7391, R. S. 1925.

In discussing the conclusive effect of a judgment decreeing that the plaintiff take nothing in an action of trespass to try title, Justice GAINES, speaking for the Court in the case of French v. Olive, supra, said:

"When appellants failed to make out their case it was a matter of no concern whether appellee could show any title or not. They were entitled to a judgment forever conclusive of all claim of appellants to the premises in controversy. This would have been the effect of an entry in the usual form, that the plaintiffs take nothing by their suit, etc. The additions removing cloud and quieting defendants' title, added nothing to the former part of the judgment. * * * Appellees have been adjudicated that to which they were entitled by reason of appellants' failure to establish their title and no more."

The same doctrine was announced in Hoodless v. Winter, supra, wherein the Court observed:

"Under their plea of not guilty the defendants could have introduced any evidence in their possession tending to defeat any item or link under which the plaintiffs claimed or under which they themselves held. A judgment in their favor under that plea would have conclusively established their title against the plaintiff and all persons claiming under them. In the action of trespass to try title a judgment rendered against the plaintiff is as conclusive in favor of a defendant who pleads 'not guilty' as it is against the defendant when the plaintiff recovers under the same circumstances. The conclusive effect of such judgments is declared by Art. 4811 of the Revised Statutes," etc.

"Where the plaintiff, as in this case," says the Supreme Court in Wilson v. Swasey, 20 S. W. 49, "fails to show title to the land, it can make no difference, when the judgment is against plaintiff, that, as between them, the land is decreed in defendant. It adds nothing to the force of the general judgment in such cases that 'plaintiff take nothing by his suit,' that title is declared to be in defendant as between plaintiff and defendant. French v. Olive, 67 Texas 400, 3 S. W. Rep. 568. This is the effect of the usual judgment against plaintiff."

Numerous opinions of the courts of civil appeals have followed this declaration of the law by the Supreme Court and the present Court has adopted opinions of the Commission of Appeals in the late cases of Houston Oil Co. v. Village Mills Co., and Stark v. Hardy, above cited, reaffirming the rule announced in the cases from which we have quoted.

2 But defendants in error insist that the judgment in Cause No. 854, Monroe v. Hickox, must be construed in the light of the findings of fact and conclusions of law filed in the court in which such judgment was rendered, and that when so construed it appears that Monroe was denied a recovery of the land, not on account of his failure to establish a regular chain of title thereto, but because in the light of the testimony adduced there was shown a conflict between Survey 103 and Survey 34, the latter being the senior survey. It is not material in this controversy upon what ground the trial court based its judgment in favor of Hickox. Monroe, by his petition, put in issue his title to Section 103. If for any reason he failed to establish the same, Hickox was entitled to a judgment, the effect of which would be conclusively to estop Monroe and those claiming under him from bringing a subsequent action for a recovery of the same land under any title which he claimed at that time. Herman v. Allen, 103 Texas 382, 128 S. W. 115; Hoodless v. Winter, 80 Texas 638, 16 S. W. 427; Harris v. First National Bank, 224 S. W. 269; Evans v. McKay, 212 S. W. 680; Freeman v. McAninch, 87 Texas 132, 27 S. W. 97; New York & Texas Land Co. v. Votaw, 16 Texas Civ. App. 585, 42 S. W. 138, 52 S. W. 125.

3 Since Monroe placed the title to Section 103 in issue in Cause No. 854, the burden rested upon him not only to exhibit to the court evidence establishing his chain of title to the land involved, but he was also required to offer sufficient proof as to the actual location of the land so that an officer seeking to enforce a writ of possession under a judgment in his favor could locate the same and restore him to the possession from

which he had been ousted without such officer being required to exercise judicial functions. In other words, it was Monroe's duty to furnish proof identifying the land described as Section 103 with such certainty that the court might determine whether Hickox had in fact ousted him from the possession thereof. The court was not justified in rendering a judgment, the effect of which would have been to take land from the possession of Hickox, unless the location of said land was definitely fixed upon the ground. A failure of Monroe to meet the burden thus imposed entitled Hickox to remain undisturbed in the possession of the land claimed by him. The judgment rendered did not disturb Hickox' possession. The statute specifically provides that such judgment shall be conclusive, not only as to the title established, but as to the "right of possession established in such action." This principle of law has been often declared in actions of trespass to try title. In the case of Jones v. Andrews, 62 Texas 652, the Court said:

"If the boundary lines of the survey were not established by the evidence to the satisfaction of the jury so as to correspond with the description given in the petition of the boundary lines of the survey, the plaintiff failed in his action, and the verdict in such case ought to have been for the defendants, and thus ought the jury to have been charged, for the plaintiff can not recover in an action of trespass to try title otherwise than according to the description he has given of the land sued for."

"In the absence of extrinsic evidence identifying the property described in the tax foreclosure proceedings," say the Court in Welles v. Arno Co-Operative Irrigation Co., 177 S. W. 985, "plaintiff has failed to establish his title to the property for which he sues. There is no such evidence and in the absence thereof, no judgment could properly have been rendered except in defendant's favor, and a peremptory instruction to that effect should have been given."

It is urged that it is proper to consider the findings of fact and conclusions of law filed by the trial court in interpreting the judgment in Cause No. 854, Monroe v. Hickox, in order to ascertain what was actually decided by the court in that case. In this connection it is said that when the judgment is so considered, it is apparent that the question involved was solely one of boundary, that is, that the issue presented was whether Section 103 was in conflict with the land covered by Survey 34, a senior survey, to which Hickox admittedly held an equitable title.

4 A judgment can not be contradicted by showing that the

issues raised in the case in which it was rendered were not in fact decided as shown by the statement of facts incorporated as a part of the record. It was so held by our Supreme Court in Swearingen v. Williams, 28 Texas Civ. App. 559, 67 S. W. 1061, as indicated by this language:

"The parol testimony offered to show that the court really did not decide the question of title was inadmissible. The statement of facts filed in that cause would be a part of the record for the purpose of appeal from that judgment had it been prosecuted, but upon this plea of res adjudicata, it was extrinsic evidence and no better than parol."

To the same effect is the holding in the case of Freeman v. McAninch, heretofore cited. The facts upon which that case was decided are so strikingly similar to those involved in the instant case that we quote at length from the opinion in that case:

"Where it appears from the record of a court having jurisdiction over the parties and subject matter, that an issue has been presented and decided, then the decision so made, so long as it is not set aside in some lawful manner, must be held conclusive upon the rights of the parties when the same issue is again presented; and in such cases extrinsic evidence can not be received to contradict the record, by showing that an issue necessarily involved in that cause was not presented and decided.

"That the court in which the former action was tried had jurisdiction over the parties to and subject matter involved in that controversy can not be questioned.

"What was the issue involved in that cause as shown by the record?

"An issue is the question in dispute between the parties to an action, and in the courts of this State that is required to be presented by proper pleadings.

"The record of the former action shows that plaintiff in his pleadings alleged, that he was the owner of a tract of land therein, particularly described, that defendants, without right, had taken possession of that, and that he was entitled to have it restored to him.

"It is conceded that the tract of 134 1/2 acres now in controversy is a part of the land so claimed.

"It shows that the defendants denied plaintiff's ownership, and controverted his right to possession; and to intensify this denial asserted right in themselves, and stated the manner in which it was claimed that this accrued.

"Thus were the issues presented, and the leading issue was one of title; and the fact that the determination of that may have depended on a question of boundary could not change the character of the vital issue in the case; for that was but a question of fact, to be considered like any other fact in determining whether the issue of title to the land should be decided in favor of the one party or the other.

"What the issues made by the pleadings were is not left uncertain by the record.

"The record of the former action shows that the court instructed the jury, that the controversy between the parties was one of title to the land described in plaintiff's pleadings; that he had shown title to the Washington survey, and defendants had shown title to the Allen survey, after which they were instructed to determine whether the land described in plaintiff's petition was a part of the Washington survey, and in the event they so found, they were instructed to find for the plaintiff.

"The court decided the question of title to the respective surveys; and only submitted to the jury the question of boundary, on which title to the land then in controversy depended; but this did not eliminate the question of title to the land sued for.

"Questions of boundary are never the subjects of litigation within themselves, but so become only where some right or title is thought to depend on their determination; and the fact that the court submitted only that question to the jury does not leave uncertain the issue actually tried and determined in the former action, even if the charge be considered without reference to other parts of the record.

"The judgment was: 'It is therefore considered by the court, that the plaintiff, John D. Freeman, recover of the defendants, J. F. McAninch and Daniel McCray, the premises described and bounded as follows:' it describes the land as described in the petition, and then declares that for this 'He may have his writ of possession and his costs in this behalf expended, for which he may have his execution.'

"In petition for writ of error defendants alleged that plaintiff had 'recovered of and from the said defendants the certain tract of land sued for.'

"That judgment, in the light of the entire record, was an unequivocal judicial determination that the title to the land described in it was in the plaintiff, and that he was entitled to its possession, and the evidence offered to prove that such was not the issue presented and determined ought to have been excluded.

"There is no decision in this State, nor elsewhere, so far as is known, which sanctions the admission of such testimony in the face of such a record."

In Cause No. 854 Monroe, by his petition, claimed that he was the owner of Survey 103 and that he had been ousted from the possession thereof by Hickox. He prayed that his title to the land be established and the possession thereof restored to him. Hickox' plea of not guilty put in issue the title and right of possession to said land. With the title and right of possession thus in issue, the court, after a trial, adjudged that Monroe had not introduced sufficient proof to entitle him to a judgment against Hickox, and judgment was accordingly rendered that plaintiff take nothing by his suit. There is no ambiguity in this judgment which would permit the introduction of extrinsic evidence to show what was actually decided. The judgment expressly adjudicates that Monroe had failed to establish title to the land sued for. If such judgment were in fact contrary to the findings of the trial court, it was merely an erroneous judgment from the binding effect of which Monroe could have been relieved only through the medium of an appeal.

The admission of extrinsic evidence to show what issues were adjudicated in an action of this character was denied by the Court in the case of New York & Texas Land Co. v. Votaw, 52 S. W. 125. It was there determined that the trial court properly refused to admit a bill of exception filed in the case by the same party in the Federal court showing all of the evidence adduced on the trial, and to permit parol testimony to show what issues were actually adjudicated in that case. In denying the right to introduce such evidence the Court said:

"The court did not err in refusing to admit in evidence the bill of exceptions filed in the case of the New York & Texas Land Co., Limited, against William Votaw in the Federal court, showing all the evidence adduced on the trial in that case, nor in refusing to admit parol testimony offered by appellant to show what issues were actually adjudicated in that cause. There is no uncertainty about what the issues were, or what was adjudicated, in that case. Those issues were clearly made and sharply drawn by the pleadings of the respective parties, and no doubt can be entertained as to what those issues were nor what was adjudicated. An issue is a question in dispute between the parties to an action, and in the courts of this State it is required to be presented by the pleadings. The petition and answer in that case show that the leading question pre-

sented was one of title, and the fact that the determination of it may have depended on a question of boundary could not change the character of the vital issue of the case; for that was but a question of fact, to be considered, like any other fact, in determining whether the issue of title to the land should be decided in favor of one party or the other. Freeman v. Mc-Aninch, 87 Texas 135, 27 S. W. 97. It is not competent to show by evidence *aliunde* that the main issue clearly made by the pleadings of the parties was not decided, for such testimony would contradict the judgment, which shows that it was. Rackley v. Fowlkes, 89 Texas 613, 36 S. W. 77."

5  Findings of fact are no part of a court's judgment. They are required to be made for the purpose of an appeal. They serve the useful purpose of disclosing on appeal the reasons upon which the trial court based its judgment. In a collateral proceeding they can not be used for the purpose of showing an erroneous judgment, as such a judgment can only be assailed in a direct proceeding.

6  No different result would be reached even if the findings of fact and conclusions of law filed by the trial court should be given consideration. The judgment adjudicated the issue of title presented by the pleadings. If the findings of fact are considered and they be inconsistent with or contradictory of that judgment, this fact would not render the judgment void and subject to collateral attack. Under such circumstances it would be merely an erroneous judgment subject to correction through appeal.

The rule on this subject is thus stated by Mr. FREEMAN in his work on Judgments, (5th ed.) p. 1483, wherein he states:

"Findings contrary to the judgment are not conclusive as to the matter found. On the other hand, a judgment, although contrary to the findings is conclusive as to the matter adjudicated."

Ruling Case Law, Vol. 15, p. 862, Sec. 336, announces the rule in this respect as follows:

"An inconsistency between the findings and the judgment rendered by a court of competent jurisdiction will not subject such judgment to collateral attack."

11 Texas Jurisprudence, p. 713, Sec. 9, lays down the rule in this respect as follows:

"Jurisdiction, it is agreed, includes the power to determine either rightfully or wrongfully, it can make no difference how erroneous the decision may be; if the court has jurisdiction

of the parties and subject matter its determination of the controversy is not void."

The late case of Stark v. Hardy, decided by Section A of the Commission of Appeals, 29 S. W. (2d) 967, was an action of trespass to try title. The judgment entry showed the notation "Plaintiffs take a nonsuit." The judgment entry on the minutes of the court, however, adjudicated that the plaintiffs take nothing by their suit, and that the defendants go hence without day and recover their costs. In construing this judgment the Commission held that the judgment entry could not be used to contradict and render void the judgment rendered in the case. In passing on the question the Court said:

"Even though it should be conceded that the fact recitals contained in the judgment entry show, of themselves that the court rendered an erroneous judgment, still they do not show that the judgment is void."

A party in whose favor a judgment has been rendered can not be deprived of the binding force of such judgment by independent findings filed by the trial court. As said by the Court in Sheffield v. Goff, 65 Texas 358:

"A party is bound by the judgment, but not the logic of courts. He is not forced to complain of a decree that satisfies him, because he knows that it has resulted from premises not involved, not proved or not true."

To hold otherwise would result in nullifying a judgment in a party's favor because of erroneous conclusions of the trial court when the party in whose favor the judgment was rendered would be powerless to have them set aside. He could not appeal from a judgment in his favor, and when he sought to obtain the benefit of the judgment in subsequent litigation upon the same subject matter, he might find its effect limited or completely nullified by findings which he was denied any opportunity to have reviewed by the appellate court. In this connection the language of Judge PLEASANTS in the case of Word v. Colley, 173 S. W. 629, is very apt. He there says:

"From this statement of the issues in the former suit, the conclusions of fact and law filed by the trial judge and the judgment rendered it is clear that the conclusion that Horace Word and his sister had no reason to understand that they were accepting the lands conveyed to them by their father in settlement of their interest in their mother's part of the community estate, and that they were not estopped by accepting said lands from asserting claim to their mother's portion of

said estate, was not material to the adjudication actually made in said suit. These were not essential to be determined in order to render judgment for defendants, and they did not enter into nor become a part of the judgment rendered. *It is the judgment, and not the verdict or the conclusions of fact, filed by a trial court which constitutes the estoppel, and a finding of fact by a jury or a court which does not become the basis or one of the grounds of the judgment rendered is not conclusive against either party to the suit.* [Italics ours.]

"In 2 Black on Judgments, page 609, the author states the rule of estoppel by judgment as follows:

." 'The force of the estoppel resides in the judgment. It is not the finding of the court or the verdict of the jury rendered in an action which concludes the parties in subsequent litigation, but the judgment entered thereon.'

"The fact that the judgment in the suit in Cherokee County was in favor of defendants precluded them from bringing in review the findings of the judge, and we can not believe that a party can be estopped by a judgment in his favor from denying findings of the court rendering said judgment, the decision of which was not essential or material to the rendition of the judgment. Philipowski v. Spencer, 63 Texas 607; Sheffield v. Goff, 65 Texas 358; Manning v. Green, 56 Texas Civ. App. 579, 121 S. W. 725; Whitney v. Bayer, 101 Michigan 151, 59 N. W. 415; Cauhape v. Parke, Davis & Company, 121 N. Y. 152, 24 N. E. 186; 23 Cyc. 1227-1228."

Defendants in error complain that Monroe's petition in Cause No. 854 was insufficient to sustain the judgment rendered in favor of Hickox for the reason that the field notes of the land sued for are merely those contained in the patent and that the land could not, from such description, be located upon the ground.

7    We think the description given in Monroe's petition was clearly sufficient to admit proof as to the identity of the particular land sued for. The description of the land in the petition calls for stakes and mounds for corners. Such calls are for artificial objects. "Where a stake is once placed," says our Supreme Court in Thatcher v. Matthews, 101 Texas 122, 105 S. W. 317, "it fixes the corner as conclusively as if marked by natural objects. Owing to the fact that it may be removed or obliterated, its location may be more difficult of proof; but, if proved, it fixes the corner with the same certainty as where it is marked by a permanent object.

"  *    *    *

"The Court of Civil Appeals seem to have treated the case as if the call had been 13,400 to a corner without mentioning a stake. If such had been the case, their ruling would probably have been sound; but a stake is an artificial object, and its mention can not be disregarded. If the place where it was originally located can be established, the call for distance should yield to it."

The principle of law laid down in the above case was followed in the case of Wm. Rice Institute, etc. v. Gieseke, 154 S. W. 612, in which it was held that a call for distance must yield to a call for a stake, even though it could not be found if there was evidence offered as to its proper location. In discussing the question the Court said:

"In Thatcher v. Matthews, 101 Texas 122, 105 S. W. 317, it is definitely decided: (a) In case of conflict a call for an artificial object will control course and distance. (b) A stake is an artificial object; and if the place where it was originally located can be established the call for distance should yield to it.

"The stake at the southwest corner and the stake and mound at its northwest corner, as called for in the field notes of the Bunker could not be found; but there is ample evidence to support a finding that they were located 1,849 varas west of the Brock, and, under the authority quoted, such location being established the call for distance must yield to it."

A description in the petition of an action of trespass to try title very similar to Monroe's petition was held sufficient to sustain a judgment for the plaintiff in Porch v. Rooney, 275 S. W. 494. The description held by the Court to be sufficient was as follows:

"58-7/10 acres out of the S.E. end of the 229-7/10 acres, beginning at a stake marked in the South corner of the W. E. Thomas survey on the North line of Warren D. C. Hall league; thence °south 45 degrees west 858 vrs. to the east corner of Thomas Greene survey, a stake in North marked W. D. C. Hall league; thence north 45 west along the north boundary line of Thomas G. Green one-third league to a stk and marked 1505 vrs.; thence north 45 east with the south line G. McDougal survey 858 vrs. to the west corner of W. E. Thomas survey stake, and marked in the prairie; thence south 45 degrees east, with said Thomas Greene line, 1505 vrs. to the place of beginning containing 228.7 acres."

**8** Even if Monroe's petition in Cause No. 854 were deficient in the respect pointed out, the subject matter embraced in the

▬▬▬▬▬▬▬▬▬▬

petition was within the jurisdiction of the court; hence, the judgment would be immune from collateral attack.

The rule on this subject is announced by Corpus Juris, Vol. 34, p. 560, as follows:

"A judgment can not be impeached collaterally on account of any defects in the pleadings which are amendable, even though such pleadings are bad on general demurrer. Thus the validity of a judgment can not be impugned by showing that a wrong form of action was chosen, or that the complaint did not state facts sufficient to constitute a cause of action, if it contained sufficient matter to challenge the attention of the court as to its merits."

The same author, Volume 15, 797, Sec. 94, further says:

"Jurisdiction of a particular action is acquired by the filing of pleadings which show the case to be within the general class of cases which the court has jurisdiction to hear and determine and a petition or complaint which shows this is sufficient to give jurisdiction, although it is defective in other respects."

In Moore v. Perry, 13 Texas Civ. App. 204, 35 S. W. 838, the rule is thus stated:

"The judgment is the final act of the court, and where a court has jurisdiction of the subject matter, and renders a judgment, its validity will depend neither on the regularity of the process, nor the sufficiency of the pleadings."

In Conner v. McAfee, 214 S. W. 646, in which a writ of error was denied by the Supreme Court, the Court said:

"In an exhaustive note to the case of Jarrell v. Laurel Coal & Land Co., reported in L. R. A. 1916E (316), the question of a collateral attack upon a judgment because of the insufficiency of the pleadings is fully discussed, and a multitude of cases from practically every State in the Union is cited, holding that such attack can not be sustained, and that, even though the judgment should grant more relief than is demanded, it is not void."

Finally, our Supreme Court in Cleveland v. Ward, 116 Texas 1, 285 S. W. 1063, laid down the same rule. Chief Justice CURETON, speaking for the Court on this subject, said:

"Regardless of the question as to whether the original petition was sufficient in all respects against demurrer, its subject matter was within the jurisdiction of the district court of Johnson County, and that court, by filing of the petition, acquired jurisdiction of the suit."

**9** Giving the fullest consideration to the findings of fact and conclusions of law made by the trial court in Cause No. 854, we can not say that the issue presented was solely one of boundary. Hickox owned an equitable title to Section 34. Monroe in his petition asserted a right to the title and possession of Section 103. The issue thus presented was not one simply of boundary. Under a similar state of facts it was determined by our Supreme Court, in Cox v. Finks, 91 Texas 318, 43 S. W. 1, that the question involved was not purely one of boundary. In that case, as in the case of Monroe v. Hickox, it appeared that there were two grants, one owned by one party to the suit and the other claimed by both. It was decided that such a case did not constitute a boundary case within the meaning of the statute. In passing on this question the Court observed:

"There may be a question of boundary as to two grants, *one owned by one party to the suit and the other claimed by both.* A suit by one to try the title to the survey in controversy may involve a question as to the boundary between that and the other. This would not in our opinion be a boundary case within the meaning of the statute." (Italics ours.)

**10** There is no merit in the contention of defendants in error that the judgment in Cause No. 854, Monroe v. Hickox, was not admissible against them because they were strangers thereto. The judgment in said cause that plaintiff take nothing operated to divest whatever title John Monroe had in said land at that time, and to vest the same in Hickox. This judgment constituted a muniment in Hickox' title, and was available for the purpose of establishing title to those holding under Hickox, even against the claim of strangers. McCamant v. Roberts, 66 Texas 260, 1 S. W. 260; Owens v. New York & Texas Land Co., 45 S. W. 601; Vol. 15, Encyc. Digest of Texas Reports, p. 124.

It is earnestly insisted by defendants in error that plaintiff in error was properly denied a recovery of the land sued for because it appears that Hickox, its predecessor in title, successfully maintained in Cause 854 that the patent by the State to Survey 103 was void by reason of the fact that the land described in such patent conflicted with the land described in senior surveys 34 and 35, and that under a well recognized principle of law the successor in title of Hickox should not be permitted to maintain the inconsistent position in this case that there is no conflict on the ground between Survey 103 and the senior surveys 34 and 35.

The doctrine of judicial estoppel thus invoked is one which operates to prevent a party who has successfully interposed in defense to an action or proceeding shifting his ground and taking a position in another action or proceeding which is so inconsistent with his former defense as necessarily to disprove its truth.

We do not question the soundness of the legal proposition thus asserted by defendants in error. We are unable, however, to agree with the assumption that the record shows that Hickox, in Cause No. 854, successfully maintained the position that Survey 103 was void because in conflict with senior Surveys 34 and 35. It is difficult to perceive upon what theory it can be contended that the trial court in Cause No. 854 determined the existence of a conflict between Survey 103 and Survey 34, when that court expressly found that it was "unable from the testimony and evidence to ascertain the true location on the ground of Surveys 103, 104, 34, and 35." It was impossible for the trial court to have found a conflict between these surveys unless there was sufficient evidence from which it could establish and definitely fix the location of each of such surveys upon the ground. It is obvious that the judgment in favor of Hickox was not the result of a finding by the trial court of a conflict between Survey 103 and Survey 34, but solely because of the failure of Monroe to discharge the burden imposed upon him by law to adduce sufficient proof from which the trial court could definitely locate upon the ground the position of the land sued for. It is therefore clear that Hickox, in Cause No. 854, did not successfully maintain the position of a conflict between Survey 103 and Surveys 34 and 35.

Aside from this, the assumption made by defendants in error that Hickox assumed an inconsistent position with that taken by the plaintiff in error in this case is not justified by anything appearing in the record. Defendants in error claim that their assumption as to Hickox' position in Cause No. 854 is sustained by the following state of facts shown by the record, viz.: First, that title to Survey 103 could not have been adjudicated a limitation title in Hickox' favor because he made no plea of limitation. Second, because in said cause there were filed abstracts of title, and it will be presumed that they were filed in obedience to a statutory demand; that the abstract of title filed by Monroe to Survey 103 shows a regular chain of conveyances from the original patentee to Monroe, and that the only abstract of title filed by Hickox is merely an award and sale by the State of Texas to him of Survey 34.

From these premises it is assumed that no title papers not included in the abstract of title were or could have been of-

fered in evidence or considered in determining the case. Based upon this state of facts, the assumption is made that Hickox took the position upon the trial of Cause No. 854, and successfully maintained it, that the land described in the field notes of Survey 103 was actually included within the boundaries of Survey 34. An inspection of the record does not reveal any demand by either party for the filing by the other of an abstract of title in Cause No. 854. It does not show that either party to that suit filed or purported to file an abstract of the title upon which he expected to rely on the trial of the case. What is mistakenly assumed to be an abstract of title is merely the giving of the statutory notice required as a predicate for the introduction of certified copies of instruments which the parties desired to introduce upon the trial of this cause.

The notice given by Monroe was addressed to Hickox or his attorneys of record, and reads as follows:

"You will hereby take notice that I have filed with the district clerk of Pecos County, Texas, to use as evidence in the above styled and numbered cause the following title papers, viz.:" (Then follows a recital of various instruments constituting Monroe's chain of title.)

The notice given by Hickox is addressed to Monroe or his attorney of record and is as follows:

"You are hereby notified that I have filed with the district clerk of Pecos County, Texas, to be used as evidence in the above styled and numbered cause the following title papers: Certified copy of application of Hickox to purchase Section 34, Block 194, G. C. & S. F. Ry. Co. for 640, together with application attached and endorsement and award by the Commissioner of the General Land Office made thereon."

It is apparent from an inspection of the above quoted documents filed by the parties that neither party was purporting to file an abstract of title in response to a statutory demand therefor. By giving the above notice the right of neither party was foreclosed from offering any legitimate and admissible evidence to establish title to the land in controversy, as would have been the case had they filed, in obedience to a statutory demand, an abstract of the title upon which they relied.

11 Even if it be conceded that Hickox, in the suit filed against him by Monroe, assumed and successfully maintained the position that there was a conflict between Surveys 103 and 34, still, since plaintiff in error was not a party to that suit, it would

not be prevented from defending the title acquired under Hickox upon any available ground.

It is well established that a position assumed by a party in a former judicial proceeding will not estop him, or privies in estate, from taking an inconsistent position in a new proceeding unless the new action is between the same parties. The rule is thus stated by the author of Corpus Juris, Vol. 21, p. 1229, Sec. 233:

"In order to work an estoppel, the position assumed in the former trial must have been successfully maintained. In a proceeding terminating in a judgment, the position must be clearly inconsistent, *the parties must be the same*, and the same questions must be involved."

Ruling Case Law, Vol. 10, p. 702, gives this statement of the rule:

"It may be laid down as a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, where the later position is to the prejudice of the adverse party, and the parties and the question are the same * * *. But, *ex vi termini*, the rule underlying these propositions does not apply to suits in which the issues and the parties are not the same, nor to a position not precisely that taken on the prior proceedings."

In Heard v. Vineyard, 212 S. W. 489, the rule as above defined was applied by the Commission of Appeals, as is revealed by the following quotation from the opinion:

"Defendants stress the proposition that the Vineyards, having recovered in the Brundrett case [17 Texas Civ. App. 147, 42 S. W. 232] upon the theory that James B. Wells, Sr., and consequently Brundrett, never had title to the 11/24 interest therein, and herein involved, are estopped to urge in this case the entirely contrary theory that Wells did have a title which passed to Brundrett through the executor's sale and vested in Lillian Vineyard through her judgment against Brundrett. *Such an estoppel can only be urged in favor of the parties to that suit.* Defendants not being parties to the suit of Vineyard v. Brundrett, plaintiffs are in no manner estopped to assert another and contrary theory upon which to base a recovery, which in this case is but an adoption of defendants' theory."

The reason for this rule is apparent. If a party has assumed a certain position and procured a judgment in his favor which

vests title in him to the land involved, he has in law a good title thereto. Since he has such a title, it naturally follows that he may convey a good title to one purchasing from him.

If Hickox took the position assumed in Cause No. 854, and thereby obtained judgment, the effect of which was to vest the title to Survey 103 in him, then there was no infirmity in his title. Presumptively, the final judgment in his favor was correct. Since this is true, no valid reason exists why he could not convey to another a good and indefeasible title to the premises. It is true that if Hickox himself were seeking to maintain this suit, he would be estopped from asserting any position inconsistent with that which he maintained when he obtained judgment in the former proceeding. But, the plaintiff in this case has taken no inconsistent position in regard to the title to this land. It has bought and paid for the land upon the assumption that the judgment in said former proceeding operated to divest title out of Monroe and vest the same in Hickox. It therefore can not be barred from asserting any defense of its title that it may see fit to urge, even though its predecessor in title may have maintained an entirely different position in acquiring the same. Plaintiff in error's right to urge any defense of the title to said land that it may see fit can not be abridged because of a position taken by a predecessor in title in a suit to which it was not a party and for which it is in no wise responsible.

12   It appears that the judgment rendered in Cause No. 854, Monroe v. Hickox, was recorded in the minutes of the district court, but that the same was not recorded in any record required to be kept by the county clerk. At the time this judgment was rendered Pecos County had less than 8,000 inhabitants. Under the provisions of our Constitution, a single clerk was required to serve as both district and county clerk.

Certain of the defendants in error claim to be bona fide purchasers for value without notice of the rendition of the judgment in Cause No. 854. It is their contention that under the statute (Art. 6638, R. S. 1925) plaintiff in error was not entitled to introduce said judgment in evidence until it had adduced proof showing a compliance with the statute requiring the same to be recorded in the office of the county clerk.

Plaintiff in error insists that where there is but one office and one officer, that a record of the judgment in the minutes of the district court would be a substantial compliance with the terms of the statute. We are unable to agree with this contention. While there was but one officer, he was required to discharge the duties incumbent upon both district and county

clerks. As such officer he was necessarily required to keep two different sets of records, one which the law required to be kept by district clerks and the other which was required to be kept by county clerks. The judgment in question was not recorded in the office of the county clerk as required by the statutes unless it was incorporated in some record kept by this officer in the performance of the duties imposed upon a county clerk.

13  It has been held that the statute in question is a registration statute and that its enactment was for the purpose of giving notice to intending purchasers. Russell v. Farquhar, 55 Texas 355; Henderson v. Lindley, 75 Texas 189, 12 S. W. 979. Since this is true, the burden rested upon the defendants in error, under their claim of bona fide purchasers without notice of the rendition of the judgment in Cause No. 854, to show that they acquired the land for value and without notice, either actual or constructive, of the rendition of said judgment.

14  Plaintiff in error introduced evidence tending to show that Hickox was in actual possession of this land from 1911 to 1915, and that such possession continued through his tenant, I. G. Yates, from the latter date until the time he was ousted from possession by the defendants in error. If it should be found upon another trial that Hickox was in actual possession of said land, either in person or by tenant at the time defendants in error acquired their rights in said land, such possession would be sufficient to constitute constructive notice to them of Hickox' claim to said land. Watkins v. Edwards, 23 Texas 449; Glendenning v. Bell, 70 Texas 632, 8 S. W. 324; Flannagan v. Pearson, 61 Texas 304; Cobb v. Robertson, 99 Texas 145, 86 S. W. 746, 87 S. W. 1148; Forrest v. Durnell, 86 Texas 650, 26 S. W. 481; Boffa v. Hebert, 42 S. W. (2d) 624.

15  At the time of John Monroe's death the judgment which we have held vested title in Survey 103 in Hickox had not been recorded in the office of the county clerk of Pecos County. At said time Monroe was therefore the apparent record owner of this land. He left a will which was duly probated in the county where the land was situated. The will devised all of the estate of which he died seized and possessed to his widow, and named her as independent executrix. After qualifying as such she filed what purported to be a complete inventory of all the property belonging to said estate. This inventory did not list Sections 103 and 104, the title to which was involved in said Cause No. 854.

It is plaintiff in error's view that the omission of Survey 103 from the inventory prepared and filed by Mrs. Monroe, inde-

pendent executrix of the estate of John Monroe, was sufficient to put purchasers from her upon inquiry as to whether title to the omitted survey had passed out of John Monroe prior to his death. We are not in accord with this view. We do not think that purchasers from Mrs. Monroe were required to examine the inventory filed in connection with the probate of Monroe's will. The record showed the apparent title to the land involved in Monroe at the time of his death. The will purported to vest the title to all the property owned by Monroe at the time of his death in his widow. The record of this will was sufficient to complete the apparent title to the land involved in Mrs. Monroe; hence, it was not necessary for an intending purchaser to investigate further than to examine the link necessary to perfect an apparent title in Mrs. Monroe.

Plaintiff in error insists that Monroe did not die seized and possessed of this land, and therefore it did not pass under his will to his widow. Of course this is true. If the real title had passed by the will, plaintiff in error would have no claim to this land. So far as the record to which a purchaser was required to look, however, the apparent legal title was vested in Monroe's widow by the provisions of his will.

16 We conclude, however, that upon the issue as to whether defendants in error were bona fide purchasers for value of the apparent legal title of the land involved without notice of the fact that title to said land had. been divested out of Monroe and vested in Hickox by the judgment in Cause No. 854, it would be permissible for plaintiffs in error to show that any of the defendants in error at the time they acquired title through Mrs. Smith had actual notice of the omission of Survey 103 from the inventory filed by Mrs. Monroe. Such fact would be a circumstance which might properly be considered by the jury in passing upon the question as to whether defendants in error were put upon inquiry as to whether Monroe in fact owned said land at the time of his death.

Plaintiff in error presents a number of assignments complaining of the admission and exclusion of evidence by the trial court. To discuss these assignments seriatim would prolong an already unduly lengthy opinion. We deem it sufficient to say that these assignments have been given careful consideration and the conclusion reached that the trial court committed no error in the rulings complained of.

Because of the errors of the trial court in striking out the judgment in Cause No. 854, in admitting the findings of fact and conclusions of law, and in giving a peremptory instruction, the judgment must be reversed.

We therefore recommend that the judgments of the Court of Civil Appeals and of the trial court be both reversed and the cause remanded for another trial.

Adopted by the Supreme Court June 19, 1934.

### ON MOTIONS FOR REHEARING.

MR. SPECIAL JUSTICE FOUTS delivered the opinion of the Court.

This case was decided by the opinion (supra) appearing in 73 S. W. (2d) 490. Motions for rehearing were duly filed. Before action was taken on these motions the personnel of the Court was changed, Associate Justice SHARP succeeding Judge GREENWOOD, and Associate Justice CRITZ replacing Judge PIERSON, deceased. Judge CRITZ certified his disqualification, resulting in the appointment of ELWOOD FOUTS, of Houston, Texas, as Special Associate Justice, who duly qualified. The Court as thus composed requested oral argument on the motions due to the fact that Chief Justice CURETON alone heard argument as a member of the Court when the case was originally disposed of. The questions decided by this opinion on the motions for rehearing embrace only a portion of those discussed and disposed of by the former opinion which is overruled where it does not conform to the law as here announced and as thus modified stands approved.

The parties will be designated here as they were in the trial court. Briefly summarized the facts are:

This suit was filed June 21, 1928, by Permian Oil Company against the defendants, seeking to recover the land described and the value of the oil produced therefrom. Plaintiff established title in John Monroe and then offered in evidence the pleadings and judgment rendered in Cause No. 854, John Monroe v. T. F. Hickox, in the district court of Pecos County, Texas. That suit was filed August 22, 1910, and disposed of March 4, 1911, by a take nothing judgment entered against the plaintiff. The petition there was in statutory form of trespass to try title describing Sections 103 and 104, Texas Central Railway, as the land sued for. The answer was a plea of not guilty. The present suit involves said Section 103. Apparently some of the defendants claim title under John Monroe. There was filed in the former case the court's findings of fact and conclusions of law. Plaintiff, which holds under Hickox, asserts that it has Monroe's title by virtue of the former judgment.

It is evident from the record that some of the defendants herein claim to have acquired their several titles at a time when that judgment was not properly recorded, as required by statute. Plaintiff made no proof that such defendants were not bona fide purchasers for value or that they bought with notice. The judgment in Monroe v. Hickox and its supporting pleadings was admitted in evidence over the objection of defendants on the ground that such proof was not made and on the further ground that the judgment was either void on the face of the record or else if properly construed did not dispose of the issue of title. Defendants renewed their objections in a motion to strike the evidence, in which they prevailed after they themselves offered in evidence, over the objection of the plaintiff, the entire record out of which emanated the judgment of Monroe v. Hickox. Their motion resulted in a peremptory instruction against the plaintiff.

Objection was made by the plaintiff that the court's findings of fact and conclusions of law in Monroe v. Hickox were not a part of the judgment record. We do not agree with this contention.

17    The phrases "judgment roll," "judgment record" and "face of the record" are terms used interchangeably in our decisions. They grow out of the common law where in the earliest cases an officer of courts of record preserved on a scroll of parchment a record of the issues which the contestants agreed to litigate. At that time their pleadings were oral. This roll later embraced the written pleadings, the court's charge to the jury, the jury's verdict, the court's final judgment and other similar matters constituting a part of the proceedings of the trial. One of the purposes of the roll was to enable the proper application of the rule of res adjudicata, the record being preserved among other reasons in order to show what issues had been disposed of and the parties to be bound thereby. When inquiry as to what constitutes this record arises it must be remembered that ordinarily one of the purposes of the inquiry is to properly apply the rule of res adjudicata. Every part of the trial proceedings preserved in courts of record under direction of the court for the purposes of its record constitutes the judgment roll.

The defendants offered the record of the former case for the purpose of establishing either that the judgment entered was void on the face of the record, or if not void, then construed in the light of the judgment roll actually disposed of only one issue, that of boundary, and therefore, they contend, did not operate as a muniment of title; or that it constituted conclusive

evidence that the sole issue determined was that Sections 103 and 104, as between the parties and their privies, either could not be located on the ground or else were in total conflict with senior surveys 34 and 35, G. C. & S. F. Ry. Co. Block 194, and because of which they contend that plaintiff, the successor in title of Hickox, is estopped to now maintain that Section 103 can be located on the ground free of conflict. These contentions are again strongly urged by the defendants in their motion for rehearing. Because of the doubts which were raised in the mind of the Court by the argument that these contentions were supported by fundamental law which had been lost sight of in too narrowly adhering to precedent, we have re-examined the whole field of law involved.

**18** The principle of res adjudicata is founded in public policy and is as old as English jurisprudence. Fundamentally its purpose is to expedite justice by putting an end to litigation; and to preserve the sanctity of the judgments of the courts by making them immune from collateral attack. Once a court has exercised its functions of decision on an issue over which it has jurisdiction, and that decision becomes final, the parties thereto and their privies can not escape its binding effect. Lacking this anchorage of finality a judicial system would be little more than a rule of fiat.

It has been said that the rule finds its application in two classes of judgments issuing out of courts having jurisdiction. One class is encountered where in the first case, out of which the judgment issues, and in the second suit where the judgment is offered in bar, the parties are the same, the cause of action is the same, the capacity in which the parties act is the same, and the res or things disposed of are the same. Such a judgment if unambiguous, as a general rule is treated as an absolute bar to retrial of the same cause of action on the theory that it has been merged in the judgment. A judgment of this type usually permits of no inquiry into the balance of the record from which it emanates, except in the case of certain well recognized exceptions. Where such a judgment is ambiguous the judgment roll, and if necessary, extrinsic evidence, is admissible, not to contradict the judgment, but only to aid in its construction. The other type is encountered where the parties to a subsequent suit seek to relitigate an issue which was disposed of by final judgment in a former suit to which they were parties, although the cause of action may have involved other issues. In the latter instance it has been said the parties and their privies are estopped to try again such' issue disposed of by the former judgment and the entire record in the first case

is admissible in evidence in order to determine whether or not the issue involved in the second case was actually disposed of in the first, without reference to the question of ambiguity.

The cases as a matter of fact do not so completely separate themselves into two such sharply defined classifications but graduate from the one into the other, and hence the explanation for the use by courts of much very general and conflicting language. It must be borne in mind that the purpose of the law remains constant to prevent the failure of justice as the result of permitting the retrial between the same parties or their privies of a cause of action or of an issue which has been finally disposed of.

**19** The judgment in Cause No. 854 unless affected by ambiguity leading to the construction sought by defendants clearly comes within the first classification. It is necessary, therefore, to ascertain whether that judgment is ambiguous. This involves a number of problems. We find no reason to hold it ambiguous simply because it is necessary to refer to the pleadings. It is true the description of the land and the nature of the cause of action do not appear in the face of the judgment. However, this is supplied by the direct reference to the plaintiff's pleadings appearing in the face of the judgment. Judgments are construed like other written instruments. "That is certain which may be made certain," and being certain, is unambiguous, whether it be a judgment or a writing of other description. By this reference in the judgment there is as effectively supplied the description of the land and the cause of action disposed of as though the judgment had recited both in its face. Freeman on Judgments, Sec. 97; Martin v. Teal, 29 S. W. 691; Ruby v. Von Valkenberg, 72 Texas 459. The petition and the decree are set forth at the end of this opinion in a footnote.*

But the defendants nevertheless contend that even after referring to the pleadings it is impossible to know what the judgment decided, and thus being ambiguous it is proper to consult the judgment record from which it appears that the sole issue determined by the court was an issue of boundary and that, being only a boundary suit, the judgment is void and falls because the description is insufficient; citing the requirements of Article 7366, and the decisions of this Court to the effect that judgments in boundary suits involving descriptions similar to the one used here, are ineffectual because nothing has been decided. Inherent in these contentions is the conception that different causes of actions are involved in boundary suits and other trespass to try title suits.

We are mindful that in a number of early decisions by a divided court, judgments in boundary suits brought in form of trespass to try title were held to be final notwithstanding the statutory right then existing by which plaintiffs in trespass to try title were permitted to bring a second suit. But while these holdings appeared to be on the theory of res adjudicata they may be in part accounted for by recognizing that they also involved the construction of a statute, the Court ascertaining from the record that title as that term was employed in the then existing statute was not an issue in those cases. There are also cases, construing the former statute making judgments in boundary cases final in courts of civil appeals, from which it might be inferred that the cause of action in a boundary case in the usual form of trespass to try title differs from that in other trespass to try title cases. Without reviewing these cases it may be said that they were undoubtedly influenced by the fact that they were construing the effect of the statute. We are unwilling to accept cases of either class as authority for the proposition that different causes of action are involved in trespass to try title suits brought in statutory form one of which turns on the fact of boundary and the other of which turns on some other evidentiary fact affecting title.

**20, 21** Measured by the familiar rule Cause No. 854 as tried was a boundary suit. On appeal it would have been judged as such because the record shows there would have been no suit but for the question of boundaries. Expressions from boundary cases on appeal indicating judgments to be void because the testimony shows a description, apparently sufficient, actually to be insufficient to locate the land on the ground, can not be invoked on collateral attack to nullify a judgment in trespass to try title where the description on its face is sufficient. Such decisions are dealing with voidable, not void, judgments. But this is not an appeal of the case of Monroe v. Hickox, No. 854. The question here is one of res adjudicata: Does the judgment in Cause No. 854 dispose of the title to the land in question so that the parties and their privies are bound thereby? Under decisions of this Court founded on our present trespass to try title statutes the contention now made constitutes a collateral attack on the judgment and under the general rule must be judged by the pleadings and judgment alone, unless the judgment because of ambiguity is limited by the judgment roll. Aside from the claim of ambiguity the judgment in Cause No. 854 as it stands is not void because of insufficient description: the description used in the petition in that case was sufficient under the requirements of Article 7366, as was pointed out

in the original opinion. The fact that on the trial boundary was the sole controversy controlling title does not keep the former judgment, which disposed of title, from binding the parties and their privies. In trespass to try title determination of the outcome of the suit through the fact of boundary does not alter the cause of action plead and disposed of by the judgment. In Monroe v. Hickox the cause of action was the title to the land described. These conclusions follow from recognized principles as is pointed out in the well reasoned opinion in Freeman v. McAninch, where it was decided that a judgment in a boundary suit brought in form of trespass to try title, although disposed of on the fact of boundary, nevertheless was res adjudicata of the issue of title. There the pleadings were in statutory form of trespass to try title.

"An issue is the question in dispute between the parties to an action, and, in the courts of this State, that is required to be presented by proper pleadings." * * * "Thus were the issues presented, and the leading issue was one of title; and the fact that the determination of that may have depended on a question of boundary could not change the character of the vital issue in the case, for that was but a question of fact, to be considered like any other fact in determining whether the issue of title to the land should be decided in favor of the one party or the other." * * * "The issue presented by the pleadings, and determined by the judgment, was one of title; and that * * * this depended on the fact of true locality of the boundary between the surveys, could not change the character of that issue." Freeman v. McAninch, 87 Texas 132, 27 S. W. 97.

The judgment in Monroe v. Hickox is not void unless construction made necessary because of ambiguity discloses some fatal deficiency.

Returning to the question of ambiguity and the contention that the effect of the judgment in Cause No. 854, because it is claimed to be ambiguous, should be limited to the issue or issues actually tried, as disclosed by the findings of fact and conclusions of law, and the further contention that plaintiff is estopped while claiming the benefits of that judgment to now show a total absence of conflict and a present ability to locate the land on the ground, it may be said that were these original questions their answer would be more difficult. It is true, as pointed out by some of the defendants, that in every decision from French v. Olive, 67 Texas 400, 3 S. W. 568, down to that announced in this case in the original opinion by the Commission of Appeals, title itself was actually the issue tried. It is

true that nowhere has this Court directly announced that in trespass to try title where the cause of action was properly limited to some issue less than title itself plaintiff nevertheless lost his title under a take nothing judgment and the defendant gained it. It is true that in many of the other states where statutes similar to our trespass to try title statutes prevail, and where the statutory provision similar to that embraced in Aricle 7391 exists, the general rule seems to be that the defendant in a take nothing judgment does not gain or become vested by presumption with the plaintiff's title. On the trial he must establish facts entitling him to acquire the plaintiff's title by virtue of the judgment. Indeed the United States Supreme Court in Barrows v. Kindred, 71 U. S. 399, 18 L. Ed. 383, construing the Illinois statute, which resembles our Article 7391, after commenting on the absence of construction by the State courts, said:

"Where a plaintiff shows no title and is therefore defeated, it is not easy to perceive how any title can be said to have been established in the action or how, under the statute, the result can affect his right to bring a new action for the same premises."

By the rule thus announced a losing plaintiff in a take nothing judgment would not be foreclosed from bringing a second suit if title itself were not affirmatively established in defendant in the first suit. Under such reasoning every take nothing judgment in trespass to try title would be ambiguous because it would be impossible to know whether it operated as a dismissal or as an adjudication of title, or an adjudication of some right incident to title. Therefore the record could rightly be employed to construe and limit it to the actual issue tried, and if the effect of the take nothing judgment was equivalent to a dismissal, that effect would permit the bringing of another suit by the losing plaintiff.

**22** But here we are confronted with Article 7391 and its construction by this Court. That article reads:

"Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action."

When Judge GAINES in French v. Olive announced the rule that the effect of a take nothing judgment in trespass to try title was to hold that the defendant had the better title, his

opinion, and the long line of decisions by this Court following it, necessarily operated to construe Article 7391 and the judgment together and in effect announced the rule to be: that when the plaintiff failed for any reason, whether it be due to conflict with a senior survey, outstanding title in a third party, or other lack of title in himself, the judgment left the defendant in possession of the premises; and that such possession imported title; and that title was thereby established in the defendant.

23  The party in possession of land is considered to be the owner until the contrary is proved. His possession imports that he holds a title thereto. As was said in Linthicum v. March, 37 Texas 349: "This has been the repeated language of this Court since Hugh v. Lane, 6 Texas 292, in which it is said: 'The possession of the defendant gave him a right against the plaintiff until he showed sufficient title.'" Thus the contention that no title was established by the judgment in Cause No. 854 seems unsound. In this State it is elementary that no judgment can "establish" "title or right of possession" in a litigant in the absolute sense of finality against the world. The "title or right of possession established" is limited to the parties bound by the judgment.

In trespass to try title brought in statutory form the plaintiff asserts that he has the title and is entitled to the right of possession. The defendant by his plea of not guilty admits that he has possession and asserts that he possesses the better title. When the ordinary judgment is entered there can not remain outstanding in the losing party an opposing title. The decree announces that facts appeared on the trial which converged and combined in the winning party all of the rights of both plaintiff and defendant.

24  Had the pleadings in this case confined the parties to the issue of locating a boundary we possibly might face a different case. The cause of action which was asserted against the defendant by the plaintiff in the trespass to try title suit of Monroe v. Hickox, plead in general form, was the claim to the title and possession of the land described. The defendant's plea of not guilty admitted his possession and put in issue the plaintiff's cause of action. The plaintiff failed and the defendant prevailed. In such an instance both the title and the possession of defendant was established as between the parties by the judgment. In this State a petition limited to the satutory form of trespass to try title always puts in issue both title and possession. Any one of a number of facts may determine the issue,

but the cause of action remains the same. If the plaintiff seeks to limit the issue to one of such facts, he must do so by special pleading in appropriate form. By so doing he may limit the case to the portion of his land involved in the boundary dispute, or possession, or to some other incident of title.

**25, 26** It plainly appears therefore that under construction long established by this Court the judgment in Cause No. 854 was unambiguous. Furthermore there was present in the judgment and the judgment roll no other feature which took the judgment out of the general rule. The judgment could not be contradicted by the record and being unambiguous neither was there anything in it to be interpreted or explained by the record. The judgment roll was properly admitted to test the validity of the judgment, but this only operated to show that the judgment was not void on the face of the record. Neither the rule of res adjudicata nor the rule of estoppel can be invoked to escape this conclusive effect. Instead these principles unite to establish this result. To hold otherwise would be to nullify the meaning of Article 7391 as long construed by this Court, and would overturn the long line of decisions to the effect that the plaintiff must recover on the strength of his own title and to the effect that possession imports title. Thus it has come about that the rule in this State is recognized to be that a judgment in trespass to try title that plaintiff take nothing by virtue of his suit operates as a muniment of title and adjudges in effect that facts were found to exist which between the parties established in the defendant all the title to the land, including, just as effectively as though it had passed by voluntary conveyance, such title as plaintiff had.

Defendants also contend the trial court properly instructed the jury to find for the defendants at the close of plaintiff's testimony because the judgment in Cause No. 854 was not recorded as required by Article 6638 Revised Civil Statutes. Defendants contend the burden was on plaintiff to prove notice or lack of consideration by defendants before the judgment was admissible. Plaintiff contends the burden was on defendants to prove themselves innocent purchasers without notice before they could receive the protection of that statute. We think that neither contention is correct.

Present Article 6638, enacted February 5, 1840, reads as follows:

"Every partition of land made without an order or decree of a court, and every judgment or decree by which the title to land is recovered shall be duly recorded in the office of the

county clerk in which such land may lie; and until so recorded, such partition, judgment or decree shall not be received in evidence in support of any right claimed by virtue thereof."

The law of 1836 relative to registration of deeds which is quite similar provided:

"No Deed shall take effect as regards the interest and rights of third parties until the same shall have been duly proved and presented to the court as required by this Act for the recording of land titles."

This Act was amended February 5, 1840, (at the same time present Article 6638 was enacted) so as to make unrecorded conveyances void as against all subsequent purchasers who established that they had bought for value and without notice. Under the law of 1836 the burden was on the senior unrecorded deed holder to establish that the junior deed holder was not an innocent purchaser for value. Under the Act of 1840 this burden was shifted and the junior deed holder was required to show that he was an innocent purchaser.

The case of Kimball v. Houston Oil Company, 100 Texas 336, 99 S. W. 852, opinion by Judge WILLIAMS, construed the Act of 1836 affecting the registration of deeds. The question involved was that of burden of proof, the holder of the junior deed contending that the burden was on the senior unrecorded deed holder to prove that the subsequent purchaser had knowledge of the prior deed. The Court held this contention to be correct. Construing the language of the Act of 1836, in connection with the Act of 1840 which amended it, Judge WILLIAMS uses this language:

"We think it is true that under either statute the burden is upon one claiming against an unrecorded deed to produce evidence sufficient to bring himself within its protection; to show, in other words, that he is one to whom its language applies."

Continuing elsewhere, while recognizing that the Act of 1836 was a registration act and that the holder under the unrecorded senior deed could offer the deed in evidence in making out his prima facie case, he then says:

"When, against such a deed" (referring to the unrecorded senior deed), "is produced a subsequent one from the same grantor, apparently valid, is it not shown prima facie at least, that the claimant under it is a third party having a right or an interest to be affected by the prior conveyance, and is he not literally within the terms of the statute and entitled to its protection?"

He answered by holding that the junior deed holder was then within the protection of that statute and that the burden shifted to the holder under the senior unrecorded deed to prove the junior deed holder was not an innocent purchaser.

The two statutes, the one applying to deeds, the other to judgments, are so similar in their wording as to make it appear that this reasoning applies with equal force in construing Article 6638, unless it is inhibited by previous decisions of this Court. The statute of 1836 concerning deeds provided that no unrecorded deed could affect the rights of third parties. The statute of 1840, present Article 6638, concerning judgments, provides that no rights can be established under an unrecorded judgment. To undertake to establish a right under an unrecorded deed would be the only way a person could affect the rights of third parties and to undertake to establish a right under an unrecorded judgment of necessity would adversely affect the rights of third parties, so that the language of each statute operates to announce the same rule which applies in the one instance to unrecorded deeds and in the other to unrecorded judgments.

Here as in Kimball v. Houston Oil Company it is plausibly argued by plaintiff that Article 6638 is only a registration statute designed to protect creditors and innocent purchasers and that properly interpreted the statute should be construed as our other registration statutes, to place the burden on the subsequent purchaser to establish that he bought for value without notice. It is true this court a number of times has held this to be a registration act and we later quote from some of those decisions. So had the Act of 1836 affecting deeds been held to be a registration act as was pointed out in Kimball v. Houston Oil Company, where Judge WILLIAMS quoted at length from Crosby v. Huston, 1 Texas 203, and then said (referring to Chief Justice HEMPHILL'S opinion in that case) :

"The Court therefore concluded that proof of the unrecorded instrument, other than the record, might be made; but also held that the 'letter of the statute will be departed from only "where the notice is so clearly proved as to make it fraudulent in the purchaser to take a conveyance in prejudice to the known title of the other party".' * * * We regard this as a decision of the question in this case, declaring the law to be that the holder of a junior deed taken while the Act of 1836 was in force is entitled to the protection of that act until his claim is shown to be fraudulent."

If the Legislature on February 5, 1840, by the statute covering judgments, had intended to place the burden on the sub-

sequent purchaser to prove that he bought for a valuable consideration without notice, before he could receive the protection of Article 6638, it could have done so by using the same language employed by it on the same day when it amended the Act of 1836 affecting the registration of deeds, under which amended act this burden was placed on the junior deed holder. Evidently it intended to avoid this by using language similar to that of the original Act of 1836 affecting deeds.

**27** Article 6638 has been construed several times by this Court to be a registration statute and therefore not a rule of evidence precluding proof of an unrecorded judgment, just as the rule concerning the Act of 1836 covering unrecorded deeds was announced in Crosby v. Huston. The unrecorded deed under the Act of 1836 was admissible to enable the claimant thereunder to make out his prima facie case. But upon the introduction in evidence by the subsequent purchaser of a conveyance taken while the senior deed was off the record the burden then fell on the unrecorded deed holder to show notice or lack of consideration on the part of the junior deed holder.

Such we believe is also the rule under Article 6638.

Thornton v. Murray, 50 Texas 161, seemed to go even further and hold as defendants contend. It is there stated:

"The evident object of this provision, * * * is not to prohibit the introduction in evidence of a decree or judgment of the class designated, under all circumstances, until recorded, but only to apply the system of registration to such a judgment or decree, and to deny to a party the right to so introduce it in evidence unless he shows its registration, or facts which make it, as between the parties and under the general provisions of the registration laws, admissible without registration."

Also in Russell v. Farquhar, 55 Texas 355, it is said:

" * * * the statute properly construed did not require the registration of the former judgment to render it admissible in a subsequent suit for title and partition of the same land between the same parties."

But in Henderson v. Lindley, 75 Texas 189, 12 S. W. 979, Judge GAINES demonstrated that the unrecorded judgment was admissible not alone against those who had notice but against all persons. However, he did not construe the statute so as to take away its protection. He only permitted the introduction in evidence of the judgment, which operated to make out a prima facie case. It was unnecessary for him to comment on the bur-

den of proof which fell on the plaintiff when the defendant introduced evidence to show that he purchased when the judgment was off the record; the trial court in that case appears to have placed the entire burden of proof on the claimant under the unrecorded judgment. The protection of the statute comes to life when the opposing party offers a title acquired while the judgment was off the record. By doing so that party brings himself within the protection of the statute and the burden is then on the claimant under the unrecorded judgment to prove notice so clearly as to make it fraudulent in the subsequent purchaser to take a conveyance in opposition to the known title of the other party.

28 The judgment in Cause No. 854, Monroe v. Hickox, was improperly stricken from evidence by the trial court. While the burden of proof rested on the plaintiff to show that the defendants had notice of the judgment or were not bona fide purchasers for value, upon the introduction of evidence by them showing that they purchased from or under John Monroe at a time when the judgment was off the record, this burden had not arisen when the motion to strike the evidence was sustained, and the peremptory instruction against the plaintiff was entered. The defendants had not offered their title.

29 Running through this law suit we find the appeal for relief from the mistakes of a party to another suit or the errors of another trial court. But such relief could come here, as is always the case, only at the expense of the rights of many of those who have been "vigilant and careful." The fact that the record in this case now shows that Monroe could have prevailed in his suit No. 854 if he had been sufficiently diligent does not weaken but only serves to emphasize the principles reaffirmed in this opinion.

"When a party passes by his opportunity, the law will not aid him. In Ewing v. McNairy, 20 Ohio St. 322, the judge says: 'By refusing to relieve parties against the consequence of their own neglect, it seeks to make them vigilant and careful. On any other principle, there would be no end to an action, and there would be an end to all vigilance and care in its preparation and trial.'" Freeman v. McAninch, supra.

The motions for rehearing are overruled.

Opinion delivered April 7, 1937.

Second motion for rehearing overruled May 17, 1937.

## FOOTNOTE

(1) The first amended original petition filed by John Monroe on February 28, 1911, in a statutory form of trespass to try title in said Cause No. 854; said amended petition being as follows:

"In the District Court of Pecos County, Texas, February Term A. D. 1911.

"John Monroe vs. T. F. Hickox, No. 854.

"To the Honorable District Court of Said County:

"Now comes John Monroe who resides in Pecos County, Texas, hereinafter called plaintiff, and leave of the Court having first been had and obtained, files this his first amended original petition and complains of T. F. Hickox, hereinafter styled defendant, and for cause of action, plaintiff represents to the Court that on or about the 21st day of April A. D. 1909, he was lawfully seized and possessed of the following described land and premises, situated in the County of Pecos, State of Texas, holding and claiming the same in fee simple, to-wit:

"1st.

"All of Section No. 104, Block 194, T. C. Ry. Co. original grantee, situated in Pecos County, Texas.

"2nd.

"All of Section No. 103, Block 194, T. C. Ry. Co. original grantee situated in Pecos County, Texas, described as follows:

"Beginning at a stake and mound at the N.E. Cor. of Sur. No. 102, Blk. 194, T.C. R. R. Co., Cert. 2302, for the N.W. Cor. of this survey.

"Thence east 1900 vrs. to a stake and mound for the N. E. Cor of this survey.

"Thence South 1209 vrs. to a stk. and md. for the S.E. Cor. of this survey.

"Thence West 1900 vrs. to a stk. and md for the S.W. cor. of this survey.

"Thence North 1209 vrs. to the place of beginning, and said Section No. 104, Block No. 194, T. C. Ry. Co. is described by metes and bounds as follows, to-wit:

"Beginning at a stake and mound at the N.E. Cor. of Survey No. 103, Block No. 194, for the N.W. Cor. of this survey.

"Thence East 1900 vrs. to stake and mound for N. E. Cor. of this survey.

"Thence South 1209 vrs. to stake and mound for S. E. Cor. of this survey; thence West 1900 vrs. to stake and mound for S. W. Cor. of this survey; thence North 1209 vrs. to the place of beginning.

"That on the day and year last aforesaid, defendant unlawfully entered upon the premises and ejected plaintiff therefrom and unlawfully, withholds from him the possession thereof to his damage in the sum of $2,000.00. That the reasonable rental value of said land and premises is $100.00 per annum; that on the date that defendant entered upon plaintiff's said land, plaintiff had on same a wire fence composed of wire nailed on the posts set in the ground, that defendant has, since said date, broke, tore down and destroyed plaintiff's said fence and the posts and wire composing the same, to the plaintiff's damage in the sum of $100.00.

"Therefore, plaintiff prays judgment of the court that inasmuch as the defendant has been duly cited to appear and answer this petition, that plaintiff have judgment for the title and possession of said lands and premises above described, and that writ of restitution issue, and for his rents, damages and costs of this suit, and for such other relief, special and general, in law and in equity that he may be justly entitled to, etc."

(2) The judgment rendered and entered in the minutes of the district court of Pecos County in said Cause No. 854, as follows:

"In the District Court of Pecos County, Texas. Feb. Term 1911.

"John Monroe vs. T. F. Hickox. No. 854.

"On the 28th day of February A. D. 1911, came on to be heard the above numbered and entitled cause in its regular order on the docket, and thereupon came the the plaintiff in person and by attorney, and also came the defendant in person and by attorney, and all parties announced ready for trial, and no jury having been demanded and all issues of law and fact being submitted to the court, the pleadings were thereupon read, the evidence introduced and argument of counsel made, and the court after hearing same, thereafter on the 4th day of March A. D. 1911, in

open court pronounced judgment in favor of the defendant. It is therefore ordered, adjudged and decreed by the court that the plaintiff John Monroe take nothing by his suit against the defendant T. F. Hickox, and that the defendant T. F. Hickox, go hence without day and recover against the plaintiff John Monroe all costs of suit, for which execution will issue. To which judgment of the court the plaintiff John Monroe in open court excepted and gave notice of appeal to the Court of Civil Appeals of the 4th Supreme Judicial District of Texas, sitting at San Antonio, Texas, and upon plaintiff's request and good cause being shown he is hereby given sixty days after the adjournment of this court within which to file his statement of facts herein."

MR. CHIEF JUSTICE CURETON dissenting.

For a statement of this case I refer generally to the opinion of the Court of Civil Appeals, 47 S. W. (2d) 500, and to the opinion of Special Associate Justice FOUTS on the motion for rehearing, (supra, 446) 107 S. W. (2d) 564. In this Court the case was originally heard by the Commission of Appeals, and the judgment recommended in the opinion of the Commission (73 S. W. (2d) 490) was entered by the Supreme Court. I was unable to agree to the correctness of that opinion and judgment, and so notified my then associates, reserving the right to file a dissenting opinion on motion for rehearing, after a more exhaustive examination of the questions involved. Argument was invited on this motion, as stated in the opinion of Special Associate Justice FOUTS. Upon the argument counsel were informed from the Bench that I had not approved the opinion previously rendered nor the decree entered thereon, but had withheld my final conclusion until the motion for rehearing came on for consideration. I could not approve the main conclusion of Special Associate Justice FOUTS, nor agree to the reversal of the case, but, being unable at the time to prepare an opinion expressing my views, I requested that a notation of my intention to do so later be appended to that opinion, and this was done. This duty I shall now attempt to perform. My views are well expressed in the opinion of the Court of Civil Appeals (47 S. W. (2d) 500), and I shall not elaborate on certain questions there discussed.

For the purpose of presenting the *locus* of this controversy I here reproduce a map taken from one of the arguments filed on behalf of defendants in error, which in turn was based on certain maps in evidence. The map is here presented only for the purpose of showing the approximate relative locations of Surveys 34 and 35, Block 194, and Section 103, the land here involved.

Mrs. M. A. Smith, the widow of John Monroe, and the other defendants in error claim title to this land under a grant from the State. The Permian Oil Company claims title from the heirs of Hickox, but the Hickox title in turn depends upon a certain judgment in Cause No. 854, John Monroe v. Hickox, entered by the district court of Pecos County on March 4, 1911. John Monroe brought that suit, as owner of Section 103, against Hickox, who owned Sections 34 and 35, shown on the map, and a *"take nothing"* judgment was entered. That judgment is the primary subject of this opinion. The judgment reads as follows:

"In the District Court of Pecos County, Texas. February Term 1911, John Monroe vs. T. F. Hickox.

"On the 28th day of February A. D. 1911, came on to be heard the above numbered and entitled cause in its regular order on the docket, and thereupon came the plaintiff in person and by attorney, and also came the defendant in person and by attorney and all parties announced ready for trial, and no jury having been demanded and all issues of law and fact being submitted to the court, the pleadings were thereupon read, the evidence introduced and argument of counsel made, and the court after hearing same, thereafter on the 4th day of March, A. D. 1911, in open court pronounced judgment in favor of the defendant. It is therefore ordered, adjudged, and decreed by the court that the plaintiff, John Monroe, take nothing by his suit, against the defendant, T. F. Hickox, and that the defendant, T. F. Hickox, go hence without day and recover against the plaintiff, John Monroe, all costs of suit, for which execution will issue. To which judgment of the court the plaintiff, John Monroe, in open court excepted and gave notice of appeal to the Court of Civil Appeals of the 4th Supreme Judicial District of Texas, sitting at San Antonio, Texas, and upon plaintiff's request and good cause being shown he is hereby given sixty days after the adjournment of this court within which to file his state[ment] of facts herein.

"O. K.    W. C. Douglas, Judge."

This judgment was rendered on March 4, 1911, and on the same day the court filed his findings of fact and conclusions of law, which read:

"John Monroe vs. T. F. Hickox, No. 854, in District Court, Pecos County, Texas. February Term, 1911.

"I, W. C. Douglas, Judge of the District Court of Pecos County, Texas, have this day prepared and do hereby order filed in this cause, the following findings of fact and conclusions of law, to-wit:

"FINDINGS OF FACT.

"1. Block C-4, G. C. & S. F. Ry. Co., is composed of sixty-four surveys. The field notes show that they were all made by H. C. Barton, Deputy Surveyor of Pecos County, between the 5th and 20th days of October, 1881. According to the field notes of Survey No. 4, of this block, the northwest corner was marked as follows: 'Pile of pebbles for the N. E. corner of Survey No. 3, this block from which Capstone Mountain bears south 1500 varas,' the northeast corner is described as 'Stone mound from which Capstone Mountain bears S. 19 E. and another Capstone Mountain bears N. 70 E.,' corners answering to this description were found on the ground located relatively as shown in the sketch of surveyor, W. T. Hope.

"2. Block Z, Texas Central Railway Company, is composed of fifty-four surveys. They were made by F. Schadowsky, between the 4th and 8th days of November, 1882. The beginning calls of this block tie on to Block C-4. There is no testimony locating this block on the ground.

"3. Block 194, G. C. & S. F. Ry. Company, is composed of one hundred surveys, the record showing they were made by I. W. Durrell, Deputy Surveyor of Pecos County, Texas, between the 17th and 31st days of May, 1883. It appears that he made fifteen surveys on each of the first six days and ten surveys on the seventh day. The beginning calls of this block tie on to Block Z, G. C. & S. F. Railway, but there is no testimony locating on the ground any of the original land marks called for in the field notes.

"3. Block No. 178, Texas Central Railway Company, is composed of thirty-six surveys, the record showing they were made by I. W. Durrell, Deputy Surveyor of Pecos County. The first eighteen of these surveys appear to have been made on November 21, 1882, and the last eighteen made on November 22, 1882. The beginning call starts at river survey at No. 543, in the name of H. & G. N. Railway Company. None of the land marks called for by the field notes of this block were located on the ground by any of the testimony.

"4. The river surveys shown on the map of surveyor W. T. Hope were made in the year 1876 by Jacob Kuechler, Deputy Surveyor of Pecos County, Survey 4, of Block C-4, G. C. & S. F. Railway Company, located on the ground from objects found corresponding to the calls for its northeast and northwest corners relatively as shown on Hope's map. Survey 71, I. & G. N. Railway on the map of the surveyor, W. T. Hope, with its northwest corner marked by stone mound; there is no call in the field notes for a stone mound at this point. Survey No. 61,

I. & G. N. Railway was located on the ground relatively as shown on Hope's map by course and distance from the northwest corner of Survey 71, established as aforesaid, and its location verified by a call of its field notes for road on a mesa. Survey No. 3, Runnels County school land, was located on the ground by course and distance based on Surveys 71 and 61, which were located on the ground as aforesaid. All of these locations were made on the ground by surveyor W. T. Hope and were based on actual runnings as shown by the red lines delineated on this map. The balance of the surveys shown on the map of surveyor Hope were platted in by him according to their calls for course and distance based on his actual work on the ground shown by the red lines, and with relation to the aforesaid land marks.

"5. By beginning at the northeast corner of Survey 4, Block C-4, G. C. & S. F. Railway Company, as found on the ground, and running by course and distance and thereby locating Surveys 103 and 104, Texas Central Railway; these two surveys would lie adjoining and immediately south of Survey 3, Runnels County school land, and would not conflict with Surveys 34 and 35, Texas Central Railway.

"6. By constructing Block 194, G. C. & S. F. Railway, based on the calls for the river surveys, as located on the ground, surveys 34 and 35, G. C. & S. F. Railway Company, Block 194 would lie adjoining and immediately south of Survey No. 3, Runnels County school land and be in total conflict with Surveys 103 and 104.

"7. Surveys 103 and 104, being the land sued for by plaintiff, are Junior surveys to Surveys 34 and 35.

"8. I am unable to follow the footsteps of the original surveyor in establishing Block 194, G. C. & S. F. Ry., either in the original location of [or] the corrected surveys, and I am unable to ascertain the true intention of the original surveyor as to locating this block on the ground.

"9. *I am unable from the testimony in evidence to ascertain the true location on the ground of Surveys Nos. 103, 104, 34 and 35, above referred to.*

"10. I find that Block 194, G. C. & S. F. Railway, was originally located by an office survey.

"11. *I find that the calls of Block 194 to tie on to Block Z and its calls to tie on to the river surveys are repugnant to each other and inconsistent, and I am unable to determine which of these calls should be regarded as a mistake of the surveyor.*

"12. I find that the plaintiff is the legal owner and holder of the fee simple title to Survey No. 103, Texas Central Railway,

and that he holds Survey No. 104, under a contract of purchase from the State of Texas, in accordance with the school land laws, and that he has made his proof of occupancy thereon as required by law, and that his said sale is in good standing.

"13. Defendant is the holder and entitled to the possession of Survey No. 34, under a contract of purchase from the State of Texas, in accordance with the school land laws, and his sale is in good standing.

"14. The said Hope map is hereby referred to and made a part hereof.

"CONCLUSIONS OF LAW.

"1. The burden of proof is upon the plaintiff to establish the location of the two tracts of land sued for upon the ground, and to show that there is no conflict between said surveys and Surveys Numbers 34 and 35, and said Surveys Numbers 34 and 35 being senior surveys.

"2. It is presumed that the work of an official surveyor was actually done on the ground, but the amount of work he certified to having done within a given time, the character of the work as called for by the field notes, and the lack of evidence found on the ground, discrepances in distances betwen objects called for, and the like, may be sufficient to rebut said presumption.

"3. Where there are two theories upon which a survey which is not fixed to the ground by any of its calls can be constructed, and one theory shows a conflict between a senior and a junior survey, and the other theory shows no conflict between them and the evidence, aided by the presumptions of law, furnishes no method for following the footsteps of the original surveyor or for arriving at the intent and purpose of the original surveyor, the presumption of the law will be resolved in favor of the senior survey that there is a conflict, the owner of the junior survey being the plaintiff.

"4. *Having found as a fact that the location of Surveys Numbers 34 and 35 and 103 and 104 cannot be located upon the ground from the testimony in evidence, and that there is a total conflict between them based on certain calls and no conflict based on other calls, which theories are irreconcilable, and the true theory unascertainable from the testimony, I conclude that the plaintiff should take naught by this suit and that the defendant should recover his costs herein.*

"W. C. Douglas, Judge District Court,
63rd Judicial District."

Endorsed: "No. 854. John Monroe vs. T. F. Hickox. Findings of fact and conclusions of law. Filed March 4, 1911. Frank

Rooney, Dist. Clk., Pecos Co., Tex., by H. L. Winfield, Dy."
(All italics mine.)

Monroe's suit was in the statutory form of trespass to try title, and Hickox's answer was a plea of "not guilty." It was in reality a *boundary* suit, the parties thinking at the time that there was a conflict between the south boundary lines of sections 103 and 104 and the north boundary lines of sections 34 and 35. Of course, the Yates survey, 34½ shown on the map, had not then been established by the State. In fact, the south boundary line of surveys 103 and 104 is shown as conterminous with the north boundary line of surveys 34 and 35 by the General Land Office maps of 1896 and 1907. Both these maps are in the record as plaintiff's (Permian Oil Co.'s) exhibits. It was not then understood or known that in truth and fact there was a vacancy between the surveys about one-half mile wide, now known as the Yates No. 34½ survey. Monroe's suit, while filed in the statutory form of trespass to try title, was in reality a *boundary suit, and was tried as such.* I quite agree with Special Associate Justice Fouts when he says in the majority opinion, *"measured by the familiar rule Cause No. 854 as tried was a boundary suit."* Being a boundary suit, the place of controversy was the conterminous line between surveys 103 and 104 on the one hand and 34 and 35 on the other. In this boundary controversy Monroe lost—did not prove his case, and the court adjudged that he *"take nothing."* We are now asked to decree that by these words *"take nothing"* Monroe lost and Hickox acquired title to survey 103, shown on the map, located approximately a half mile north of the line of controversy, and between which and sections 34 and 35 there then intervened a vacancy, upon which is now located the Yates survey No. 34½. In other words, we are asked to say that the district court by its *"take nothing"* decree in a boundary suit awarded title to Hickox to a tract of land a half mile away, *which Hickox did not own, and which Monroe did own.* (See Fact Findings 12 and 13, quoted above.) That is stretching a *"take nothing"* judgment a little too far for my legalistic credulty to accept. I decline to believe that the trial judge intended to render, or that interpreted under established rules he did render, an India-rubber decree, that would stretch from the point of actual controversy across an intervening section of land, and enfold in its elastic embrace the premises here involved.

My immediate purpose is to determine the meaning and effect of the *"take nothing"* judgment. Under our system of jurisprudence a judgment is to be tested by its substance rather than by its form. Form is of slight importance, and no particu-

lar phraseology is required to make a judgment valid. A judgment should, of course, be appropriate to the proceedings in which it is rendered, show affirmatively that the merits of the case have been passed upon, and award the judicial consequences which the law attaches to the ascertained facts. 25 Tex. Jur., p. 446, Sec. 77. Among the requisites of a valid judgment is the universally approved one that where property is the subject of the decree it should be described with certainty, or furnish means of its identification. 25 Tex. Jur., p. 542, Sec. 81. A judgment must also be sufficiently definite and certain to define and protect the rights of all litigants, and must not be in the alternative, or be conditional or contingent. 25 Tex. Jur., pp. 456, 457, Secs. 84, 85. The rules of construction as applied to judgments generally is well stated in Texas Jurisprudence as follows:

"In accordance with familiar principles a judgment is construed as it is written. If plain and unambiguous, it is not to be interpreted in the light of subsequent or prior statements or acts of the court evincing judicial intention when the judgment was rendered. Nor can a judgment be sustained or explained by reference to the understanding of the parties, even though entered pursuant to stipulation. It must be read as an entirety, and if, taken as a whole and construed according to well-known rules, it is unambiguous, no room is left for interpretation."

However, if a judgment is *ambiguous*, familiar rules of construction may be applied:

"If the judgment is ambiguous, application is made of familiar rules of construction, such as that effect will be given to reasonable intendments, that a writing will be made to harmonize with the facts, that the circumstances will be considered, *and that a common-sense construction will be put on language as a whole.*" (Italics mine.)

In construing an ambiguous judgment *"it is always proper to look to the entire record, the pleadings, the issues made in the case, the testimony offered in support of the pleadings, the charge, the fact or facts found by the court, and other proceedings leading up to the judgment."* 25 Tex. Jur., pp. 461, 462, Sec. 89, and the many cases cited in the notes. Not only is it true that a judgment must conform to and be supported by the pleadings and the evidence, but in a case tried to the court "it must conform to and be supported by the findings of fact and conclusions of law." 25 Tex. Jur., p. 484, Sec. 103. Not only is it true that a judgment must conform to the verdict (25 Tex. Jur., p. 484, Sec. 104), *but it must conform to the conclusions of fact found by the trial judge when separately stated.* R. S.,

Arts. 2209, 2211; 25 Tex. Jur., p. 488, Sec. 106, and cases cited in the notes. As to this rule the statute cited expressly declares:

"Where a special verdict is rendered, *or the conclusions of fact found by the judge are separately stated, the court shall render judgment thereon unless set aside or a new trial is granted.*" (Italics mine.)

The rules stated above have a direct bearing on the proper interpretation of the judgment here involved, and are as applicable here as if the case were one of direct appeal from the decree before us for interpretation.

We are compelled to determine the meaning and effect of the judgment in Cause 854, previously described, in order to ascertain whether or not it is *res adjudicata* on the question of title to the land involved in the instant case. In interpreting that judgment we should assume that the trial judge who entered it did his duty, and followed the rules of law applicable to the case; that he intended to render a valid judgment, one which would not be set aside on appeal, one appropriate to the proceeding, and which awarded the judicial consequences which the law attached to the ascertained facts; that he intended to make his decree certain, and not conditional or contingent; and that he intended to follow the statute (Art. 2209), which was but the embodiment of the rule as generally applied by courts, and conform his decree to the *"conclusions of fact"* found by him and "separately stated," found, and filed on the very day the judgment was rendered. 25 Tex. Jur., p. 460, Sec. 87; Austin v. Canaway, 283 S. W. 189; Freeman on Judgments, (5th ed.) Vol. 1, p. 132, Sec. 76; 34 C. J., p. 501, Sec. 794, p. 504, Sec. 797. As a leading authority states: "When the language is susceptible of two interpretations, from one of which it follows that the law has been correctly applied to the facts and from the other that there has been an incorrect application, that construction will be adopted which upholds the judgment." 25 Tex. Jur., pp. 459, 460, Sec. 87; Gough v. Jones, 212 S. W. 943; 34 C. J., p. 501, Sec. 794.

I shall now for the moment assume that the judgment before us (in Cause No. 854, previously quoted) is ambiguous, and determine whether or not the judgment roll, embracing in this instance the findings of fact and conclusions of law of the trial judge, previously quoted, were admissible in evidence in this suit. The Permian Oil Co. depends for its title upon that decree, and says that by force of that judgment their predecessor in title, Hickox, became the owner of the land here involved, and that it is *res adjudicata* of the *issue of title* of the defendants

in error, who claim under John Monroe, who brought and lost the suit in which the judgment was entered. Of course, if the judgment is not ambiguous, nothing is admissible to explain it. It explains itself. 25 Tex. Jur., p. 459, Sec. 86, supra. Nor can the judgment roll or anything else be used to contradict an unambiguous decree. 25 Tex. Jur., p. 853, Sec. 328. There are exceptions to the rules just stated, but they are not here involved. 25 Tex. Jur., p. 862, Sec. 331. *But once it is determined that a judgment is ambiguous, the whole record may be examined to ascertain its meaning, and it will not be given a more extensive effect than is warranted by the record.* 25 Tex. Jur., p. 461, Sec. 89; Freeman on Judgments, (5th ed.) Vol. 1, p. 134, Sec. 76; 34 C. J., p. 501, Sec. 794, p. 504, Sec. 797, p. 505, Sec. 801; Black on Judgments, (2d ed.) Vol. 1, p. 179, Sec. 123; Durden v. Roland, 269 S. W. 274; Dunlap v. Southerlin, 63 Texas 38; Campbell v. Schrock, 50 S. W. (2d) 788; Houston Oil Co. v. Village Mills, 241 S. W. 122, 129; Poitevent v. Scarborough, 103 Texas 111; Lipsits v. Bank, 293 S. W. 536; Barnes v. Hobson, 250 S. W. 238; Oklahoma v. Texas, 256 U. S. 70, 88; Last Chance M. Co. v. T. M. Co., 157 U. S. 685, 690; Barton v. Chrestman, 275 S. W. 401; Campbell v. Laughlin, 280 S. W. 189.

In Texas Jurisprudence (Sec. 89, supra) the rule is stated as follows:

"In construing an ambiguous judgment it is always proper for the court to look to the *entire record* (including the citation), the pleadings, the issues made in the case, the testimony offered in support of pleadings, the charge, *the fact or facts found by the court,* and other proceedings leading up to the judgment." (Italics mine.)

In Freeman on Judgments (Sec. 77) cited above, the text reads:

"If the entry of a judgment is so obscure as not to express the final determination with sufficient accuracy, reference may be had to the pleadings and to the entire record. If, with the light thrown upon it by them, its obscurity is dispelled, and its intended signification made apparent, it will be upheld and carried into effect. In case of doubt regarding the signification of a judgment, or of any part thereof, the whole record may be examined for the purpose of removing the doubt. One part of the judgment may be modified or explained by another part; and uncertainties in the judgment may become certain under the light cast upon them by the pleadings or other parts of the record. This is well illustrated in those cases in which the

description of property in the judgment is supplemented and made certain in this manner. And the judgment will not be given a more extensive effect in this respect than is warranted by the record."

Black on Judgments (Sec. 123 cited above) states:

"The rule for the construction of ambiguous judgments is clearly stated by the Supreme Court of Kansas in the following language: 'Wherever the entry of a judgment is so obscure as not to clearly express the exact determination of the court, reference may be had to the pleadings and the other proceedings; and if, with the light thus thrown upon such entry, its obscurity is dispelled and its intended signification made apparent, the judgment will be upheld and carried into effect in the same manner as though its meaning and intent were made clear and manifest by its own terms.' "

The texts cited from 34 Corpus Juris declare:

"The legal operation and effect of a judgment must be ascertained by a construction and interpretation of it. This presents a question of law for the court. Judgments must be construed as a whole, and so as to give effect to every word and part. The entire judgment roll may be looked to for the purpose of interpretation. Necessary legal implications are included although not expressed in terms, but the adjudication does not extend beyond what the language used fairly warrants. The legal effect, rather than the mere language used, governs. *In cases of ambiguity or doubt, the entire record may be examined and considered. Judgments are to have a reasonable intendment. Where a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered.*" (Sec. 794, italics mine.)

"Where the language of a judgment is ambiguous or its meaning doubtful, reference may be had to the pleadings in the case, and the judgment interpreted in the light which they throw upon it. But if the meaning of the judgment is clear and plain on its face, it can not be changed, extended, or restricted by anything contained in the pleadings." (Sec. 796.)

"*A judgment should be interpreted with reference to the verdict of the jury, and if possible so as to harmonize them. Like rules apply where the facts are found by the court or referee.*" (Sec. 797, italics mine.)

Writing on "The Judgment as an Estoppel," FREEMAN in his work on Judgments, in part, says:

"To determine what was adjudicated in a prior action the record in that case may, of course, be considered. The judgment itself must be properly proved. But inasmuch as the mere judgment may not alone establish the jurisdiction of the court, or show what matters were determined, it is ordinarily necessary to prove the whole judgment-roll or record when a judgment is urged as an estoppel or bar. And even though it may not always be necessary, it is always proper to do so. But as to just what may be regarded as a part of the record for this purpose and what extrinsic matters may be proved or considered, there is no absolute or universal rule. However, it is quite generally agreed that the pleadings, instructions to the jury and the verdict, *or the findings and conclusions, may be looked to to determine what was adjudicated.*" (Italics mine.) Freeman on Judgments, (5th ed.) Vol. 2, Sec. 771.

The Texas authorities are consistent with the texts cited and quoted.

It is also quite elementary that when reference must be had to the record in interpreting an ambiguous judgment, the *whole* record may be examined. As said in Black on Judgments, (2d ed.) Vol. 1, p. 181, Sec. 124:

" * * * and when a copy of the record of the judgment is required, for the purpose of bringing the case by appeal or writ of error into this court, or bringing suit upon it in another state, or as evidence under an issue of nul tiel record, *or to establish a former adjudication of the same subject-matter between the same parties,* and indeed in all cases where it is essential to have a complete record of a judgment, the pleadings and process are an indispensable part of it. *And the general rule is, that where the copy of a record of a judgment is required, it must be of the whole record, so that the court may determine the legal effect of the whole of it, which may be quite different from that of a part.*" (Italics mine.)

Indeed, not only is it true that the whole record may be examined in interpreting an ambiguous judgment, but evidence outside the record, even parol, is admissible to show for what the judgment was recovered, *"what was the real cause of action."* 34 C. J., p. 506, Sec. 803; Labrie v. McKim, 120 S. W. 1083; Cook v. Burnley, 45 Texas 97; Russell v. Place, 94 U. S. 606; Freeman v. McAninch, 87 Texas 132, 135; Reast v. Donald, 84 Texas 648; Oldham v. McIver, 49 Texas 556, 572.

Is the judgment before us (in Cause No. 854) ambiguous? That it is so is not open to discussion. You can not from the face of the judgment determine the nature of the cause of

action, what was sued for, nor what was recovered, if anything; nor does it contain the description of any property or land. As it stands it is not only ambiguous, but absolutely meaningless. When you read it you know that Monroe sued Hickox and lost, but whether the suit was for land, personal injuries, foreclosure of a lien, etc., you can not determine from the face of the decree. You might infer from the names that it was *not a suit for divorce*, and that is as definite a conclusion as the face of the judgment warrants. So it was, and is, necessary to examine the record to determine the nature of the cause of action, the description of the property involved, if any, and to ascertain the facts found by the trial court, in order that we may so interpret the decree in such a manner that it will award the judicial consequences of the ascertained facts. (Authorities supra.)

The majority opinion in this case says the judgment is not ambiguous, although it states: *"It is true the description of the land and the nature of the cause of action do not appear in the face of the judgment."* (Italics mine.) The opinion then proceeds to hold, if I understand it correctly, that this is supplied "by the direct reference to the plaintiff's pleadings appearing in the face of the judgment." Then, declares the opinion, "By this reference in the judgment there is as effectively supplied the description of the land and cause of action disposed of as though the judgment had recited both in its face," citing Freeman on Judgments, (5th ed.) Vol. 1, Sec. 97; Martin v. Teal, 29 S. W. 691; and Ruby v. Von Valkenberg, 72 Texas 450. The language of the judgment to which the opinion makes reference, following recitation of appearance, is found in the following extract: *"The pleadings were thereupon read, the evidence introduced, and argument of counsel made,* and the court after hearing same," pronounced judgment, etc. This is a mere recital that the pleadings were read, and no more incorporated the description of the cause of action and of the land contained in the petition in the judgment than it did "the evidence introduced and argument of counsel made." Of course, the pleadings, like the balance of the record, could be considered in interpreting an ambiguous judgment, but to say that this bare recital that the pleadings were read so incorporates the pleadings in the decree as to relieve it, as it stood, of its ambiguous character, is a doctrine so novel and strange as to be, I believe, without precedent. Certainly the authorities cited in no manner support it. The text cited from Freeman on Judgments reads:

"In view of the principle that that is certain which is capable of being made certain, it is generally held that a reference to·

the pleadings or other parts of the record is sufficient if they contain an adequate description. If the property is sufficiently described in the declaration it is sufficient for the judgment to refer to it as the premises 'mentioned in the declaration.' But if the description referred to is itself uncertain, it can not aid the judgment, as where a writ is directed to issue to restore to plaintiff possession of the lands, or so much thereof as are not farther south than the boundary line described in the verdict, and the verdict merely designates such line as being seven and nine feet south of a certain hedge. A judgment for 'the tract of land described in the petition,' which in fact describes two tracts, is insufficient. But describing property as 'the property in controversy' may be sufficient." (Sec. 97.)

FREEMAN, as shown, has reference to decrees which refer to the pleadings specifically for descriptive purposes, as "the tract of land described in the petition," etc.

In Martin v. Teal the judgment in part was that "the wire fence enclosing survey 70, and in controversy," etc., and that the defendant recover possession of said "one mile or more of wire fence enclosing said survey and the subject matter of this controversy." All the Court of Civil Appeals held was that the judgment was sufficient "when it refers for such description to pleadings by which it can be made certain."

In Ruby v. Von Valkenberg a judgment rendered in 1847 was introduced in evidence, which decreed "that the property conveyed by plaintiff and wife by deed, *of which plaintiff has incorporated a copy into his petition and which is made a part of this decree.*" This Court simply held that under the law as it existed when the judgment was entered this was permissible.

The question here involved, viz., whether a bare recital that the pleadings were read in a district court case relieved a vague and meaningless judgment of its ambiguity to such an extent as forbids reference to the complete judgment-roll in its interpretation, was not involved nor determined by either of the authorities cited. The plain fact is that the plaintiffs in error are depending upon an ambiguous judgment, and the whole judgment roll record is admissible to determine its meaning,— not just a part of the record, the pleadings for example,—but the whole of it, *"so that the court may determine the legal effect of the whole of it, which may be quite different from that of a part."* (Black on Judgments, Sec. 124, supra.) However, if it be said that the bare recital in the judgment that the pleadings were read had the legal effect of incorporating within the judgment itself the entire petition in Cause No. 854 (which, as a matter of law, common sense, and common practice it does

not), still the judgment would not be relieved of its ambiguous character, and resort must still be had to ascertain the character of suit in which the judgment was entered, and the effect to be given to the decree, as awarding the judicial consequences to the determined facts. The petition in form was one of statutory trespass to try title, and the answer consisted of a plea of "not guilty." Looking at the petition and answer alone, what sort of suit was it? The answer is that nobody can tell. It might, of course, be one to actually determine who possessed the title to the land described, but it might be for any one of a number of other purposes, viz.:

(1) It might be a *boundary suit*, to determine a boundary line between two adjacent surveys, for it has long been the law that such suits could be brought in form of trespass to try title; or

(2) it might be an action brought by a grantor to recover the land because of a breach of condition of a deed, as, for example, for failure to pay purchase money notes; or

(3) an action by a landlord who seeks to compel his tenant to vacate the premises upon expiration of a lease; or

(4) an action by an owner whose land has been appropriated for public use without compensation; or

(5) an action to attack the validity of process or sale under execution.

41 Tex. Jur., p. 458, Sec. 5; Weaver v. Vandervanter, 84 Texas 691; Kaufman v. Brown, 83 Texas 41; Andrews v. Parker, 48 Texas 94; Garner v. C. R. I. & G. R. Co., 10 S. W. (2d) 132; Spencer v. Rosenthal, 58 Texas 4; Purinton v. Davis, 66 Texas 455; Smith v. Cottingham, 49 S. W. 145; Curran v. T. L. & Mtg. Co., 60 S. W. 466; Bull v. Beardon, 159 S. W. 1177.

It is obvious that since the judgment interpreted alone by the petition in this case does not disclose which one of the many actions which could be brought in the form of trespass to try title was in fact brought and tried, it is ambiguous as not disclosing the nature of the action, an important factor in determining the effectiveness of a plea of *res adjudicata*. Shall we say that when a vendor brings a trespass to try title suit against his vendee because the latter has defaulted in the payment of purchase money, and the court decrees that he "take nothing" in the judgment, without disclosing in the decree that he does this because in his fact findings he has found that the vendee has not defaulted in payment; that thereby the vendee has recovered the land and has his vendor's title, and that the balance of the record, including the findings of fact, may not be looked

to to ascertain what was actually litigated? I think not, although that would be the certain result under the majority opinion in this case. Shall we say that when a landlord brings a trespass to try title suit against his tenant, and is defeated in fact because the tenancy is not up, that the tenant under a "take nothing" judgment would get his landlord's title, and that the record, including the fact findings, could not be examined to determine just what was litigated? I think not, and yet under the majority opinion in this case that would be the result. Many other illustrations of the result of an application of the doctrine of the majority opinion in this case could be given, but the above suffice to show the grave injustice of looking only to the "take nothing" decree and the pleadings as alone determining what has actually been litigated by a trespass to try title action. GREENLEAF says:

"When a former judgment is shown by way of bar, whether by pleading, or in evidence, it is competent for the plaintiff to reply, that it did *not relate to the same property or transaction* in controversy in the action, to which it is set up in bar; and the question of identity, thus raised, is to be determined by the jury, upon the evidence adduced. And though the declaration in the former suit may be broad enough to include the subject-matter of the second action, yet if, upon the whole record, it remains doubtful whether the same subject-matter were actually passed upon, it seems that parol evidence may be received to show the truth. So, also, if the pleadings present several distinct propositions, and the evidence may be referred to either or to all with the same propriety, the judgment is not conclusive, but only *prima facie* evidence upon any one of the propositions, and evidence *aliunde* is admissible to rebut it." (Greenleaf on Evidence, (15th ed.) Vol. 1, Sec. 532.)

GREENLEAF adds in his notes:

"It is obvious that, to prove what was the point in issue in a previous action at common law, it is necessary to produce the *entire record.* Foot v. Glover, 4 Blackf. 313. And see Morris v. Keyes, 1 Hill 540; Glascock v. Hays, 4 Dana 59."

As I understand the majority opinion in this case, it disregards the difference between a trespass to try title suit which involves and determines title, and a trespass to try title suit which involves and determines boundary. After referring to the fact that formerly we permitted *two* suits for title and only *one* over boundary, though each might be brought in form of trespass to try title, and that from 1892, for forty years or more, this Court under the statute had jurisdiction over trespass to try title suits when they were in reality title suits, but had

none over boundary suits, although brought in the form of trespass to try title, the opinion declares:

"We are unwilling to accept cases of either class as authority for the proposition that different causes of action are involved in trespass to try title suits brought in statutory form one of which turns on the fact of boundary and the other of which turns on some other evidentiary fact affecting title."

That quotation plainly shows that the majority opinion disregards the essential difference between a trespass to try title suit *involving and determining title, and a trespass to try title suit involving and determining boundary.* The rule thus announced, I believe, is without precedent and without authority, and the opinion, in so far as I am able to understand it, cites none.

For many years after the adoption of the common law and the Trespass to Try Title Statute in 1840, our statutes permitted two suits for the recovery of title to lands by the plaintiff, the second within a limited time after the first, although he lost the first one. Then, as now, these suits were to be in the form of trespass to try title. This Court, of course, following the statute, recognized that an adverse judgment in the first suit was not *res adjudicata* or a bar to the plaintiff's right to timely file and try the second suit. But this Court held that if the first suit, though in form of trespass to try title, was in reality a *boundary* suit, an adverse judgment *was res adjudicata* and barred the second suit. Jones v. Andrews, 72 Texas 5, 12; Spence v. McGown, 53 Texas 30; Bird v. Montgomery, 34 Texas 713; San Patricio v. Mattis, 58 Texas 242.

In the case of Jones v. Andrews, just cited, the Court makes clear its recognition of the distinction between a suit involving and to determine title, and one involving and to determine boundary, approving the rule that where a suit though *nominally* to try title, was in fact to settle a disputed boundary, it was not a title suit.

It is well within the recollection of the Bar generally that from 1892 until a few years back the Courts of Civil Appeals had final jurisdiction over boundary suits, and this Court, though clothed with power to hear title suits, had no such authority over boundary suits, even though brought in form of trespass to try title. Wright v. Bell, 94 Texas 577; Schiele v. Kimball, 194 S. W. 944; Cox v. Finks, 91 Texas 318; Steward v. Coleman Co., 95 Texas 445. So, for approximately an hundred years the jurisprudence of Texas has recognized a difference between title and boundary suits, even though each were brought in the statutory form of trespass to try title. I think it too late,

without legislative action, to now say that we will no longer recognize the distinction and apply rules of law respectively applicable. Of course, it is true that in a boundary suit the defendant, like *Bre'r Rabbit* in the fable, can sit and say nothing, and compel the plaintiff to prove his title; but this does not make it a title suit—it still remains a boundary suit. Cox v. Finks, 91 Texas 318, 320. The majority opinion in this case quite rightly says: *"Measured by the familiar rule, Cause No. 854 as tried was a boundary suit."* I am of the opinion that the "take nothing" judgment should be interpreted as a "take nothing" judgment would be interpreted in a boundary suit, and in harmony with the court's findings of fact and conclusions of law, instead of as if in a title suit, as the majority opinion holds. When we go to the record, and examine the court's findings of fact and conclusions of law, we find that in fact the court did not determine the question of boundary, because he was unable to locate the surveys whose conterminous lines were involved. He so stated in fact finding No. 9, quoted above. In No. 4 of his conclusions of law, quoted supra, the court stated his reasons for entering the "take nothing" judgment, as follows:

*"4. Having found as a fact that the location of Surveys Numbers 34 and 35 and 103 and 104 cannot be located upon the ground from the testimony in evidence, and that there is a total conflict between them based on certain calls, and no conflict based on other calls, which theories are irreconcilable, and the true theory unascertainable from the testimony, I conclude that the plaintiff should take naught by this suit and that the defendant should recover his costs herein."* (Italics mine.)

It is perfectly plain from this conclusion that the words "take nothing" as used in the judgment were not intended to award title to any land,—not even a disputed strip to Hickox. The judge said, "I conclude that the plaintiff should *take naught"* by this suit because the allegedly conflicting surveys could not be located on the ground; in other words, the plaintiff should "take naught" simply because he had failed to make a case.

The words "take nothing" used in the judgment are not words defined by statute; nor are they defined in Words and Phrases and other similar works. They are to be interpreted in the same manner that other words are interpreted,—and here, as found in an ambiguous decree, must have their meaning determined in connection with the basis of that decree, viz., the findings of fact and conclusions of law of the trial court. That by their use, and by the judgment rendered, the court did not intend to award title to section 103 to Hickox is shown by his

finding No. 12, quoted above, in which he said: *"I find that the plaintiff* [Monroe] *is the legal owner and holder of the fee simple title to Survey 103,"* etc. It is also plain, I think, that by the judgment the court did not intend to fix or establish any boundary line. The judgment is ambiguous, and that interpretation is the only one consistent wih his findings of fact and conclusions of law to the effect that he could not locate on the ground the surveys involved or their conterminous boundaries.

The object and purpose of a suit to determine title and those of a boundary suit are plainly different, and require different types of judgment. The object of a trespass to try title suit to establish and determine title is, of course, to ascertain who has the superior title to the land; and a judgment which describes the land involved as it is described in the petition, either directly or by reference, is sufficient as to description, even though simply a copy of the field notes of the patent,—provided, of course, by it the land may be located. Freeman on Judgments, (5th ed.) Vol. 1, Sec. 96. The object and purpose of a boundary suit is to ascertain the boundary, and the judgment determines the location of the line on the ground and describes and identifies it. 41 Tex. Jur., pp. 680, 681, Sec. 173. And it is elementary that a decree which does not do so is void; and since a description which merely follows that of the patent settles nothing, but leaves the parties where they were when the suit began, the judgment is void. Converse v. Langshaw, 81 Texas 275, and other authorities cited by Justice HIGGINS in Permian Oil Co. v. Smith, 47 S. W. (2d) 500, 507, et seq.

Bearing in mind these differences in the objects and purposes of suits to determine title and those to ascertain and fix boundaries, and the resultant differences in the descriptions which must characterize the judgments, it is plain that a "take nothing" decree in a boundary suit does not transfer title, because it does not establish and determine the boundary. Such was the effect given to a general judgment for the defendant in a previous boundary suit in the case of Wallis v. Wofford, 26 S. W. 739, by Justice WILLIAMS, who afterward for many years graced the Supreme Bench of Texas. In the reported case a judgment for the defendant in the former suit was set up as a bar to the maintenance of the action. Justice WILLIAMS overruled the contention, saying:

"But, from the petition, it does not appear that any line was fixed. The judgment was simply for defendant, which means that plaintiff had not shown himself entitled to judgment for the land for which he sued. Whatever may be the effect of

that judgment, it does not fix any boundary, and does not preclude appellant from asserting title to any land which, under or consistent with it, he may show himself to have."

In this connection, and without elaboration, I desire to state that I approve what Mr. Justice HIGGINS has said as to the invalidity of the judgment here involved, because of its failure, in the light of the record, to determine the boundary dispute. See Permian Oil Co. v. Smith, 47 S. W. (2d), pp. 500, 507, et seq.

Thus far I have regarded the judgment here involved as one rendered in a boundary suit. If it be said, however, that it was in truth and in fact a suit for title (which it was not), still the result produced by proper observance of the rules of interpretation is the same, viz., that the "take nothing" judgment did not have the effect of awarding Monroe's title to Hickox. We are dealing with an ambiguous judgment—a meaningless one, until it is read in connection with the judgment roll. When we go to the judgment roll and examine the findings of fact and conclusions of law, it is at once apparent that the court did not intend to award the title to Survey 103 to Hickox, because he says, as I have shown, that Monroe owned that survey. An ambiguous judgment is to be interpreted in harmony with the findings and conclusions of the trial court, if this can be done. Authorities supra; R. S., Arts. 2209, 2211; 25 Tex. Jur., p. 488, Sec. 106. Even if it be said that the "take nothing" judgment here was rendered in a title suit, there is still another reason why it was not effective to transfer title from Monroe to Hickox. Assuming that the ordinary effect of a "take nothing" judgment is to transfer title to the defendant, it is plain, I think, that the rule has no application where the court deciding the case is unable to locate the land, and at the very time of the rendition of the judgment finds that it can not be located.

An action to try title is a proceeding *in rem* or of the nature of such a proceeding. 41 Tex. Jur., p. 678, Sec. 170. The title is transferred because of the court's jurisdiction of the land, and the decree operates, not *in personam*, by compelling the adverse party to execute a transfer, but *in rem*, upon the land and title to the land. *If the title is transferred, the transfer is effected by the judgment itself operating upon the property within the jurisdiction of the court.* "The foundation of jurisdiction is physical power" (McDonald v. Maybee, 243 U. S. 90, 91), that is, the power to seize a thing that actually exists,— *and the court knows exists,*—and deliver into the possession of the party to whom has been adjudged rightful possession. A

court is without jurisdiction to transfer by mere force of its judgment title to land which the court can not locate, and expressly finds that he can not locate;—indeed, in this case the court could not be certain of the existence of the land which the suit purported to involve. In truth, the court in his conclusion of law No. 4, heretofore quoted, said that he concluded that *"the plaintiff* [Monroe] *should take naught,"* because the surveys involved could not be located. In the light of that conclusion, his "take nothing" judgment must be interpreted, and to say that by it he transferred title to Hickox, the defendant, is not only against sound reason, but would assume that the court deliberately entered a *void judgment,*—one he knew at the time was void,—for the reason that it is elementary that a decree must so describe the property awarded that it may be found and located on the ground. 41 Tex. Jur., p. 683, Sec. 175. If the court was unable to locate the land involved, as he concluded, and yet entered a judgment awarding it to Hickox, then we would be compelled to say he deliberately entered a void decree. The judgment is not to be interpreted in this manner if there is an interpretation which makes the judgment valid. Authorities supra; 25 Tex. Jur., p. 460, Sec. 87; Gough v. Jones, 212 S. W. 943. A proper interpretation of the judgment before us is that it had no purpose to transfer title, and that the "take nothing" order was entered merely because the plaintiff had failed to prove his case by the location of the surveys and the conflicting conterminous lines, if any. The case of Freeman v. McAninch, 87 Texas 132, bears no relationship to the instant case. The statement of that case by Judge STAYTON, in part, is as follows:

"On December 7, 1878, John D. Freeman brought an action against J. F. McAninch and Daniel McCray to recover a tract of land containing 622½ acres, part of one-third of a league of land originally granted to Joseph Washington. The petition was in the usual form of petitions in actions of trespass to try title, and described the land sued for by metes and bounds.

"Defendants demurred to the petition, pleaded not guilty, limitation of three and ten years, and set up title in themselves to part of the land, giving description of that which each claimed, under a survey made by virtue of certificate issued to George Allen.

"They also pleaded in estoppel acts of D. C. Freeman, and claimed value of improvements made in good faith.

"The cause was tried before a jury, and upon a verdict for plaintiff judgment was rendered in his favor for all the land sued for, which in the judgment was described as in the petition.

"From that judgment defendants prosecuted a writ of error to the Supreme Court, where the judgment was affirmed.

"Defendants in that action seek in this to avoid the effect of that judgment as an adjudication of the title to all the land described in the petition and judgment; and Daniel McCray now asserts title to 134-1/3 acres of the land embraced in that judgment, to which he asserts title through a conveyance made by D. C. Freeman pending that action."

Daniel McCray sought to avoid the judgment against him to 134-1/3 acres of the land because of some oral agreement had with the lawyers, which was no part of the judgment roll, and by reason of which he did not introduce in evidence his title. All that Judge STAYTON held was that he could not contradict the judgment by evidence of such an agreement, and that he was concluded by the decree in the previous suit. Briefly, that is all that was decided, and in no way sustains the contention of the Permian Oil Co. in the case before us.

I approve what is said in the opinion of the majority with reference to recordation of judgments, notice, innocent purchasers, etc. From what I have said above my disagreement with the majority on the vital question here involved is apparent. I am of the view that the judgment of the Court of Civil Appeals should have been affirmed; and since this was not done, and for the reasons herein shown, I respectfully dissent from the majority opinion.

Opinion delivered July 7, 1937.